[No. 29271. *En Banc.* February 23, 1945.]

RAY J. CHAMPAGNE, *Appellant,* v. THE DEPARTMENT OF LABOR AND INDUSTRIES, *Respondent.*[1]

[1]Reported in 156 P. (2d) 422.

*Griffin & Gershon (J. A. Kavaney,* of counsel), for appellant.

*The Attorney General* and *L. E. O'Neill, Assistant,* for respondent.

MILLARD, J.—While engaged in extrahazardous employment May 1, 1940, Ray J. Champagne was struck by a falling tree. As a result of that accident, both bones of the victim's left leg about halfway between the knee and the ankle were fractured. He also suffered a chip fracture of the front surface of a vertebrae in the base of his neck.

Champagne was afforded necessary medical treatment and hospitalization for his injuries and paid time loss from date of accident to May 14, 1941. His claim was closed by order of the supervisor of industrial insurance May 23, 1941, with payment of 15.6 degrees for permanent partial disability. The claim was reopened in July 1941. Claimant appealed February 27, 1942, to the joint board, which, after reviewing the cause, entered an order sustaining the action of the supervisor in closing the claim and awarding to claimant for permanent partial disability twenty per cent as compared to amputation of the left leg at or above the knee and fifteen per cent of the maximum award for unscheduled or unspecified disability for the chip fracture of the vertebrae in the base of the neck. Claimant appealed to the superior court for King county, where the cause was tried on the departmental record to a jury, which returned

a verdict in favor of defendant department. From judgment entered on the verdict, plaintiff appealed.

The author of respondent's brief did not represent respondent in the trial court or in this court. Counsel representing respondent on appeal was not counsel for respondent on trial of the cause.

It is contended that the court erred in denying the right to counsel to argue to the jury the amount in dollars and cents to which appellant is entitled, that the court erroneously charged the jury and committed reversible error in refusing to give certain requested instructions.

██ By reason of the statutory restriction, the only evidence introduced on appeal to the superior court was that contained in the departmental record.

"In all appeals to the superior court from any order, decision or award of the joint board . . . either party shall be entitled to a trial by jury upon demand . . . no party to the appeal shall be permitted to introduce evidence in court in addition to that contained in the departmental record." Laws of 1939, chapter 184, § 1, p. 579 (Rem. Rev. Stat. (Sup.), § 7697-2 [P. C. § 3488-21].

The gist of the court's instructions to the jury, immediately following reading of the departmental record to the jury, is as follows:

Instruction No. 1. Appellant received May 1, 1940, while employed in the logging industry, an injury to his back, and his left leg was broken between the knee and the ankle. The department made certain allowances to Champagne for time loss and permanent partial disability. The claim was reopened and hearing before the joint board resulted in confirmation of the department's decision. From that ruling Champagne appealed to King county superior court. The sole issue to be decided by the jury is the amount of permanent partial disability compensation, if any, to which Champagne is entitled.

By instruction No. 2, the jury was charged that, under the statute by which the department is instituted, the legislature created a schedule of awards for certain types of injuries—so much for the loss of an eye, so much for the

loss of a hand. The system under the statute is one of limited insurance. While the jurors may feel that the amount payable to a person for the loss of an eye or a hand is inadequate, that is not a matter in this case for the jury's consideration. The question presented is whether the department, in making its award in this case, found the correct percentage of injury; hence, the jurors are not concerned with what the award may have been in dollars, but are concerned with a determination of what is the per cent of the injury. In that connection, the jurors were instructed that Champagne had already been allowed a permanent partial disability award of fifteen per cent of the maximum allowable for an injury to the neck and upper back. He had also been allowed an award of twenty per cent of the amputation value of his left leg at or above the knee. Champagne contends that the awards are erroneous and should have been fifty per cent of the maximum allowable for an injury to the neck and upper back, and fifty per cent of the amputation value of his left leg at or above the knee; hence, the problem for determination, with regard to each item, is whether the department found the correct percentage, and if not, what is the correct percentage.

Instructions Nos. 3, 4, 5, and 6 correctly charged the jury as to the burden of proof, the meaning of "preponderance of the evidence," that the decision of the department is *prima facie* correct but that presumption no longer persisted after the claimant introduced credible evidence to the contrary, and that the jurors were the sole and exclusive judges of the evidence and of the weight to be attached to the testimony of each witness.

The jury was finally instructed (instruction No. 7) to select, when retired to the jury room, a member of the jury to act as foreman, whose duty it would be to sign the answers to the following interrogatories:

"(1) Did the department find and allow to the plaintiff the proper percentage for the injury to his upper back and neck?

"(2) Did the department find and allow to the plaintiff the proper percentage for the injury to his leg?"

By instruction No. 7, the jury was further informed that it would be given the exhibits in the case, a copy of all the instructions, and the two quoted interrogatories. The jury was advised that if its answer to either interrogatory was "yes," then the jury would be no further concerned with the question; if the answer to either of the interrogatories was "no," then, *under the evidence* it became the duty of the jury to fix what should have been the proper allowance in percentage for such injury; and that, as this is a civil cause, ten members of the jury were sufficient to bring in a verdict. The answer of the jury to each interrogatory was "yes."

Following the court's instructions, which counsel for appellant assume as a whole are so erroneous as to excuse breach of the rule which precludes consideration of an assignment of error, based upon court's refusal to charge the jury correctly, in the absence of specific objection to the instructions, counsel for appellant endeavored to inform the jury in dollars and cents the amounts allowable for injuries to hip, amputation above the knee, amputation below the knee, and loss of foot. Counsel was admonished by the court to refrain from argument on any basis except that of disability (not the jury's function, on the theory and under the evidence of the case, to determine in money the amount of damage but to determine the degree of disability from which the law computes amount to be allowed), and that the jury had been instructed "that we are not to discuss it in dollars."

Unmindful that the jury had been instructed in harmony with the theory of each party in accordance with the evidence adduced thereon, which would have sustained a verdict for either party, counsel for appellant disregarded the court's admonition. Whereupon, counsel was warned "if you continue to discuss this case in dollars, you do it at your peril." Counsel then stated, "I will submit the matter without argument. I am not going to oppose the court."

■ The theory of respondent that appellant sustained permanent partial disability and that an allowance of twenty per cent as compared to an amputation of the left

leg at or above the knee and fifteen per cent of the maximum award for the chip fracture of a vertebrae in the neck was adequate, is sustained by testimony of respondent's medical witnesses and by other evidence.

The issue is a narrow one, and the court correctly charged the jury thereon. Appellant admits that he suffered only a permanent partial disability. His theory, which was correctly submitted to the jury, that his permanent partial disability is greater—fifty per cent for each injury—than that found by respondent, is supported by the testimony of his medical expert, who testified as follows before the joint board:

"Q. Doctor, how would you rate the disability in this case? A. I would rate him as a P. P. D. . . . Q. By P. P. D. you mean permanent partial disability? A. Yes (continuing) of unspecified of the upper back and neck, 50%. I would also rate him at 50% of an amputation of the leg, of the left leg, above the knee or through the knee. Q. In other words, at or above the knee? A. At or above the knee."

Counsel was directed to make an argument in harmony with the theory of the cause as submitted to the jury in the court's instructions. Appellant's counsel submitted "the matter without argument." Counsel was not denied the right to argue the case. Had it been deemed the court committed error, counsel should have timely excepted, which counsel did not do. The practice in civil cases applies to this class of cases, therefore it was incumbent upon appellant to save his exception. Not having saved an exception, we may not consider appellant's first assignment of error.

The argument that the trial court erred in limiting the jury to a determination of the question whether the department allowed to the appellant the proper percentage for the injury to his upper back and neck, and the question whether the department allowed to appellant the proper percentage for the injury to his leg, and not permitting the jury to fix the amount of compensation in dollars and cents

to which the jury considered appellant was entitled, is superficially persuasive.

■ The court's instructions were not in contravention of, but were consistent with, the workmen's compensation act. It is clear from a reading of the statute (Rem. Rev. Stat., § 7697) that the superior court does not have any original jurisdiction in the administration of the workmen's compensation act and may not decide any question which must in the first instance be decided by the department. The lawful inquiry upon review in the superior court is only with reference to such question or questions which were actually decided by the department. *Cole v. Department of Labor & Industries*, 137 Wash. 538, 243 Pac. 7; *Johnston v. Department of Labor & Industries*, 163 Wash. 549, 2 P. (2d) 67, and *Albrecht v. Department of Labor & Industries*, 192 Wash. 520, 74 P. (2d) 22.

■ When the department made a decision on the question of proper classification or degree of any injuries suffered by the claimant, who appealed from that decision, the superior court was limited to a review of that question. Prior to the amendment (Laws of 1939, chapter 184, Rem. Rev. Stat. (Sup.), § 7697-2) which provides that, in appeals to the superior court from any decision of the joint board of the department, no party to the appeal shall be permitted to introduce evidence in court in addition to that contained in the departmental record, the department was permitted, but the appellant was denied permission, on the hearing in the superior court, to offer evidence or testimony other than or in addition to that offered before the joint board or included in the record filed by the department. The 1939 amendment stresses, in effect, the intent of the legislature evident in the statute prior to amendment of 1939 to limit the superior court and the jury to a consideration of the question or questions actually decided by the department. Appellant's theory, which was correctly submitted to the jury, was that his permanent partial disability was greater—fifty per cent for each injury—than that found by respondent.

■ When, on the facts, the joint board found that appellant sustained partial disability and that an allowance of twenty per cent as compared to an amputation of the left leg at or above the knee, and fifteen per cent of the maximum award for the chipped fracture of a vertebrae in appellant's neck, was adequate, the joint board fully exercised its original jurisdiction. On appeal, the superior court did not assume original jurisdiction. When it submitted under the statute to the jury the question of the degree of disability, the verdict of the jury fixed the degree of disability, the only question to be submitted to the jury; and, of course, the award itself was fixed by the verdict. In the event the jury's verdict modifies or reverses the department's decision and judgment is entered thereon, and that judgment is affirmed on appeal, under the statute (Rem. Rev. Stat., § 7697) the superior court is required to remand the cause to the department with direction to proceed in accordance with the verdict and judgment, whereupon the department makes an award to the claimant in accordance with the schedule of compensation set forth in the workmen's compensation act.

"An instruction is an exposition of the principles of the law applicable to the case in its entirety, or to some branch or phase of the case, which it is the duty of the jury to apply in order to render a verdict establishing the rights of the parties in accordance with the facts proved." Reid's Branson Instructions to Juries, (3d ed.) vol. 1, § 1, p. 1.

The errors assigned on the court's instructions to the jury and refusal to give certain instructions are without substantial merit. The issue of extent of appellant's permanent partial disability was submitted to the jury by proper instructions. The instructions given fully and fairly stated the law, therefore the refusal to give certain requested instructions did not constitute error.

The judgment is affirmed.

BEALS, C. J., STEINERT, BLAKE, ROBINSON, SIMPSON, and MALLERY, JJ., concur.

GRADY, J. (dissenting)—I am not in accord with the view expressed in the majority opinion—that the proper method of submitting cases of this kind to a jury is by interrogatories limiting the jury to a determination of whether the department found and allowed the claimant the proper percentage of permanent partial disability, and, if not, what would be the proper allowance in percentage for his injury.

There is nothing in the workmen's compensation act justifying such procedure. The act speaks in terms of money compensation to be paid to an injured workman. There are certain specified permanent partial disabilities resulting from amputations for which fixed amounts in money are provided, also for some miscellaneous disabilities. The compensation for any other permanent partial disability is in the proportion which the extent of such disability bears to one of the specified disabilities most clearly resembling it, but not exceeding a fixed sum. The department has adopted a rule whereby the physicians chosen by it to examine a claimant and report to it are instructed, in rating permanent partial disabilities of the unspecified class, to compare each of them in terms of percentage to the maximum allowance. It would seem from this that the percentage of disability is not considered other than with reference to the monetary allowance.

In this case, the physicians followed the rule, and, in their testimony taken by the examiner and later read to the jury, the physicians expressed themselves in terms of percentage based on the maximum allowance. Dr. Leavitt said:

"It was thought he had a permanent partial disability in two locations—first: in the neck which we feel was fifteen per cent as compared to the maximum allowable for a nonspecified injury and for the left leg it was thought he had a permanent partial disability of twenty per cent as compared to the value of amputation at or above the knee."

Dr. Edmunds said:

"He has sustained a permanent partial disability which we would estimate as follows: For the injury to his cervical spine, 15 per cent of general and unspecified injury, where

80 degrees represent a maximum, or 12 degrees. For the injury to his left leg and residual stiffness and discomfort, 20 per cent as compared to amputation at or above the knee, or 15.2 degrees."

Dr. Rickards, called by the claimant, said:

"I would rate him as a P. P. D. [permanent partial disability] . . . of unspecified of the upper back and neck, 50%. I would also rate him at 50% of an amputation of the leg, of the left leg, above the knee or through the knee. . . . At or above the knee."

From the whole record submitted to the jury, it had to fix the *amount* of compensation to which it considered the claimant was entitled. The act does not contemplate that a jury shall find a verdict in terms of the degree or percentage of disability.

Physicians, in testifying, may be asked for their opinion as to the extent of the injury a claimant has sustained. They cannot give their opinion as to the amount of compensation the claimant is entitled to, as that is the very question the jury must decide; so, if the disability is partial, they must of necessity express themselves in terms of percentage or degree. But they are allowed to do this in the unspecified cases on the basis of a percentage of the maximum allowance, and thus, in effect, they do fix the amount of the compensation. They should be required to state the percentage of *disability*, that is, to what extent the claimant has been disabled. The jury should then be instructed to determine from the evidence the extent of the liability and state if the award made by the department was sufficient or, if not, what it should be, not exceeding the maximum. If the trial *de novo* is not conducted in this way, the jury does not do that which the statute contemplates, namely, to find and determine the amount of compensation to which the claimant is entitled.

By the method used in this case, all a jury would do is to attempt to follow the rule of the department, about which it has no knowledge and therefore cannot apply, and approve or disapprove a percentage of a maximum award fixed by the department, without knowing the amount, and

which it, likewise, cannot consider. The jury should not be required to pass upon the correctness of the percentage formula used by the department and the physicians who examined the claimant in its behalf. It should fix the *amount* of the compensation to be paid the claimant, not just a percentage figure in order that the amount of money a claimant is to be paid can be fixed by someone else by applying the percentage to the maximum. In some cases, a jury may well conclude that the award should be more or, in others, less than the percentage of the maximum allowance testified to by the physicians, and thereby express the real purpose of the statute providing for awards to injured workmen.

During the argument of this case, it was asserted that there is a difference of opinion among the judges of the trial courts as to whether the special interrogatories propounded to the jury should be if the department found and allowed the claimant the proper percentage of permanent partial disability, as was done in this case, or if it correctly rated his disability in the specified sum of money awarded him, as was done in *Yockey v. Department of Labor & Industries*, 21 Wn. (2d) 171, 150 P. (2d) 680. In the *Yockey* case, the reports of the physicians were in terms of percentages of permanent partial disability, and the awards of the department were those percentages of the maximum of $2,400 allowed by statute for a permanent partial disability. The total was $1,429.80. By the form of interrogatories used, the jury found this total amount was insufficient under the evidence and found the award should be a greater sum.

An award in this kind of case requires the taking into consideration of loss of earning power, and, as no fixed amount is provided for in unspecified cases, as is in the specified cases, it may happen that two workmen may suffer the same kind of injury but their loss of earning power be different. They both may be regarded as twenty-five per cent disabled, but this would not mean they would both be entitled to the same award. But if the twenty-five per cent figure is applied to the maximum amount of award, they would both receive the same amount of money. I

think this view is borne out by what we said in *Harrington v. Department of Labor & Industries*, 9 Wn. (2d) 1, 113 P. (2d) 518, when considering a total disability case, p. 7:

"The theory upon which compensation is allowed to an injured workman is that such workman has sustained a loss of earning power, or capacity to earn money. Although the amounts to be allowed in specific instances are fixed by statute, the awards are nevertheless predicated upon a commensurate loss of earning power."

I do not think this theory can properly be applied in unspecified cases, unless the trier of fact determines from the evidence the extent of loss of earning power and then concludes what the money award should be, not exceeding the maximum.

The judgment should be reversed and the case remanded for a new trial.

JEFFERS, J., concurs with GRADY, J.

