228 P.3d 1 (2010)
168 Wash.2d 1
STATE of Washington, Respondent,
v.
Jason Lee FRY, Petitioner.
No. 81210-1.
Supreme Court of Washington, En Banc.
Argued March 12, 2009.
Decided January 21, 2010.
*2 William D. Edelblute, Attorney at Law, Spokane Valley, WA, for Petitioner.
John Allan Troberg, Clallam County Prosecuting Atty., Port Angeles, WA, Stephen D. Trinen, Pierce County Prosecutors Office, Tacoma, WA, Timothy Rasmussen, Stevens County Prosecutor, Colville, WA, for Respondent.
Alison Holcomb, ACLU of Washington, Paul J. Lawrence, Matthew J. Segal, K & L Gates LLP, Seattle, WA, Amicus Curiae on behalf of American Civil Liberties.
Suzanne Lee Elliott, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of Washington Association of Criminal Defense Lawyers.
Pamela Beth Loginsky, Washington Ass'n of Prosecuting Atty., Olympia, WA, Stephen D. Trinen, Pierce County Prosecutors Office, Tacoma, WA, Amicus Curiae on behalf of Washington Association of Prosecuting Attorneys.
J.M. JOHNSON, J.
¶ 1 Two police officers were informed of a marijuana growing operation at the residence of Jason and Tina Fry. When the officers approached the home, the smell of burning marijuana was apparent. Jason Fry did not consent to a search, and Tina Fry presented a document purporting to be authorization for medical marijuana. The officers obtained a telephonic search warrant, entered the Frys' home, and seized over two pounds of marijuana.
¶ 2 At trial, Jason Fry (Fry) argued the marijuana evidence should have been suppressed because presentation of a medical marijuana authorization automatically negates probable cause. The judge denied the motion to suppress and also declined to allow *3 Fry to present a compassionate use defense on other grounds. Fry appealed both rulings.
¶ 3 We affirm the Court of Appeals, which upheld the trial court's decision to allow the evidence seized at the Frys' home pursuant to a warrant and declined to allow Fry to claim the compassionate use defense at trial.

FACTS AND PROCEDURAL HISTORY
¶ 4 On December 20, 2004, Stevens County Sheriff Sergeant Dan Anderson and Deputy Bill Bitton (officers) went to the residence of Jason and Tina Fry. The officers had received information there was a marijuana growing operation there.
¶ 5 The officers walked up to the front porch and smelled the scent of burning marijuana. Jason Fry opened the door, at which time the officers noticed a much stronger odor of marijuana. Fry told the officers he had a legal prescription for marijuana and told the officers to leave absent a search warrant. Tina Fry gave the officers documents entitled "medical marijuana authorization." The authorization listed Fry's qualifying condition as "severe anxiety, rage, & depression related to childhood." Clerk's Papers (CP) at 20-23.
¶ 6 The officers obtained a telephonic search warrant and found several containers with marijuana, growing marijuana plants, growing equipment, paraphernalia, and scales in the Frys' home. The marijuana was found to weigh 911 grams (more than 2 pounds).
¶ 7 Prior to trial, Fry made a motion to suppress the evidence seized by the officers pursuant to the search warrant. The motion also indicated Fry would assert the affirmative defense of medical marijuana authorization (compassionate use defense) pursuant to former RCW 69.51A.040 (1999).
¶ 8 After hearing arguments, the superior court judge denied Fry's motion to suppress. The court concluded the officers demonstrated probable cause to search the Frys' home based on the strong odor of marijuana and other facts described in the telephonic affidavit. The court also concluded that Fry did not qualify for the compassionate use defense because he did not have a qualifying condition.[1]
¶ 9 After a stipulated facts bench trial, Fry was convicted of possession of more than 40 grams of marijuana. The court sentenced him to 30 days of total confinement, converted to 240 hours of community service. Fry appealed, and Division Three of the Court of Appeals held that Fry's production of a document purporting to be a marijuana use authorization did not prohibit the search of Fry's home by police officers who had probable cause and obtained a warrant. State v. Fry, 142 Wash.App. 456, 461, 174 P.3d 1258 (2008). The Court of Appeals also agreed with the trial court that Fry was not a "qualifying patient" and therefore was not able to claim the affirmative defense for medical marijuana use. Id. at 462-63, 174 P.3d 1258. Fry appealed the decision, and we granted review. State v. Fry, 164 Wash.2d 1002, 190 P.3d 55 (2008).

ISSUES
1. Whether a telephonic search warrant was supported by probable cause when police officers were informed that marijuana was being grown at a certain residence, the officers smelled marijuana upon arriving, but the defendant provided a medical authorization form for marijuana
2. Whether the trial court erred in disallowing Fry's medical marijuana defense

ANALYSIS

A. Whether a telephonic search warrant was supported by probable cause when police officers were informed that marijuana was being grown at a certain residence, the officers smelled marijuana upon arriving, but the defendant provided a medical authorization form for marijuana

¶ 10 Fry argues the marijuana evidence seized by the officers should have been *4 suppressed. We review a trial court's conclusion of law pertaining to the suppression of evidence de novo. State v. Eisfeldt, 163 Wash.2d 628, 634, 185 P.3d 580 (2008) (quoting State v. Carneh, 153 Wash.2d 274, 281, 103 P.3d 743 (2004)). As the findings of fact in this case were stipulated and uncontested, they are verities on appeal. State v. Levy, 156 Wash.2d 709, 733, 132 P.3d 1076 (2006) (citing State v. O'Neill, 148 Wash.2d 564, 571, 62 P.3d 489 (2003)).
¶ 11 The warrant clause of the Fourth Amendment to the United States Constitution and article I, section 7 of our own constitution requires that a search warrant be issued upon a determination of probable cause. State v. Vickers, 148 Wash.2d 91, 108, 59 P.3d 58 (2002).[2] "The probable cause requirement is a fact-based determination that represents a compromise between the competing interests of enforcing the law and protecting the individual's right to privacy." State v. Neth, 165 Wash.2d 177, 182, 196 P.3d 658 (2008) (citing Brinegar v. United States, 338 U.S. 160, 176, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949)). "Probable cause exists where there are facts and circumstances sufficient to establish a reasonable inference that the defendant is involved in criminal activity and that evidence of the criminal activity can be found at the place to be searched." State v. Maddox, 152 Wash.2d 499, 505, 98 P.3d 1199 (2004) (citing State v. Thein, 138 Wash.2d 133, 140, 977 P.2d 582 (1999)). "It is only the probability of criminal activity, not a prima facie showing of it, that governs probable cause." Maddox, 152 Wash.2d at 505, 98 P.3d 1199.
¶ 12 There is no contention that the facts, including the information and smell of marijuana, do not support a finding of probable cause to search the Frys' residence.[3] However, Fry contends the probable cause was negated once he produced the authorization. Although there was a later dispute over the validity of the authorization, there is no indication in the record that the officers or the magistrate questioned the validity at the time the search warrant was issued. Nevertheless, the officers' search and arrest were supported by probable cause, and a claimed authorization form does not negate probable cause.

Former chapter 69.51A RCW (1999) (the Act)
¶ 13 By passing Initiative 692 (I-692), the people of Washington intended that
[q]ualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana.
Former RCW 69.51A.005 (1999). Additionally,
[i]f charged with a violation of state law relating to marijuana, any qualifying patient who is engaged in the medical use of marijuana, or any designated primary caregiver who assists a qualifying patient in the medical use of marijuana, will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter. Any person meeting the requirements appropriate to his or her status under this chapter shall be considered to have engaged in activities permitted by this chapter and shall not be penalized in any manner, or denied any right or privilege, for such actions.
Former RCW 69.51A.040(1) (emphasis added). Based on I-692 and the derivative statute, we have recognized that Washington voters created a compassionate use defense against marijuana charges. See State v. Tracy, 158 Wash.2d 683, 691, 147 P.3d 559 (2006). An affirmative defense admits the *5 defendant committed a criminal act but pleads an excuse for doing so. State v. Votava, 149 Wash.2d 178, 187-88, 66 P.3d 1050 (2003) (citing State v. Riker, 123 Wash.2d 351, 367-68, 869 P.2d 43 (1994)). The defendant must prove an affirmative defense by a preponderance of the evidence. State v. Frost, 160 Wash.2d 765, 773, 161 P.3d 361 (2007). An affirmative defense does not negate any elements of the charged crime. Id.
¶ 14 Possession of marijuana, even in small amounts, is still a crime in the state of Washington. See RCW 69.50.4014. A police officer would have probable cause to believe Fry committed a crime when the officer smelled marijuana emanating from the Frys' residence. Fry presented the officer with documentation purporting to authorize his use of marijuana. Nevertheless, the authorization only created a potential affirmative defense that would excuse the criminal act. The authorization does not, however, result in making the act of possessing and using marijuana noncriminal or negate any elements of the charged offense. Therefore, based on the information of a marijuana growing operation and the strong odor of marijuana when the officers approached the Frys' home, a reasonable inference was established that criminal activity was taking place in the Frys' residence. Therefore, the officers had probable cause and the search warrant was properly obtained.
¶ 15 This conclusion is supported by McBride v. Walla Walla County, 95 Wash. App. 33, 975 P.2d 1029, 990 P.2d 967 (1999). In McBride, a police officer arrested McBride for hitting his son. The officer had substantial facts and information to indicate McBride acted in self-defense. Nevertheless, the officer arrested McBride as mandated by the domestic violence section in former RCW 10.31.100(2)(b) (1996).
¶ 16 Like the compassionate use defense, self-defense is an affirmative defense. See City of Kennewick v. Day, 142 Wash.2d 1, 10, 11 P.3d 304 (2000). McBride argued it was the officer's duty to evaluate the self-defense claim and determine whether it negated the existence of probable cause to arrest him. McBride, 95 Wash.App. at 39, 975 P.2d 1029. The court concluded, "[t]he officer is not judge or jury; he does not decide if the legal standard for self-defense is met." Id. at 40, 975 P.2d 1029. The court determined the affirmative defense "did not vitiate probable cause." Id.
¶ 17 Fry attempts to distinguish McBride. He notes that the officers in that case were required to arrest an individual involved in a domestic violence dispute. There was no statutory requirement compelling the officers to search Fry's residence and seize the marijuana. However, probable cause is not created or negated by statutory mandate to search or arrest (or lack thereof). In most cases, including the one before us, officers have discretion as to whether they will conduct a search or make an arrest once they have probable cause. However, this discretion has no impact on whether probable cause exists.
¶ 18 Under the Act, a person "charged with a violation of state law relating to marijuana. . . will be deemed to have established an affirmative defense to such charges by proof of his or her compliance with the requirements provided in this chapter." Former RCW 69.51A.040(1). One of the requirements is that a qualifying patient "[p]resent his or her valid documentation to any law enforcement official who questions the patient regarding his or her medical use of marijuana" (presentment requirement). Former RCW 69.51A.040(2)(c).
¶ 19 An amici brief[4] calls our attention to the "presentment" requirement in the Act. It is argued that if the presentment requirement is to have meaning, presentation of a patient's authorization must establish lawful possession of marijuana, and thereby the absence of criminal activity that would provide probable cause for a search or seizure. Amici Br. at 7-8.
¶ 20 The presentment requirement must be read in context. It is only triggered when someone is "charged with a violation." Former *6 RCW 69.51A.040(1). A person who meets the presentment requirement (and all other requirements) will "be deemed to have established an affirmative defense." Id. Additionally, the requirements, taken together, do not indicate that the Act created more than an affirmative defense. One of the other requirements mandates that the charged individual "[p]ossess no more marijuana than is necessary for the patient's personal, medical use, not exceeding the amount necessary for a sixty-day supply." Former RCW 69.51A.040(2)(b). It would be impossible to ascertain whether an individual possesses an excessive amount of marijuana without a search.
¶ 21 Instead, the presentment requirement facilitates an officer's decision of whether to use his or her discretion and seize the marijuana and/or arrest the possessor. Once the officer has searched the individual and established that the individual is possessing marijuana in compliance with the Act (i.e., appropriate documentation, limited supply, etc.) the officer would then have sufficient facts to determine whether an arrest is warranted. This view is supported by the 2007 amendment to RCW 69.51A.040. The current version reads, "[i]f a law enforcement officer determines that marijuana is being possessed lawfully under the medical marijuana law, the officer may document the amount of marijuana, take a representative sample that is large enough to test, but not seize the marijuana." RCW 69.51A.040(1). It is difficult to imagine how a law enforcement officer, having been presented with a medical marijuana authorization, would be able to determine that the marijuana is otherwise being lawfully possessed (and take a sample) without some kind of search.
¶ 22 I-692 did not legalize marijuana, but rather provided an authorized user with an affirmative defense if the user shows compliance with the requirements for medical marijuana possession. See former RCW 69.51A.005, .040. As an affirmative defense, the compassionate use defense does not eliminate probable cause where a trained officer detects the odor of marijuana. A doctor's authorization does not indicate that the presenter is totally complying with the Act; e.g., the amounts may be excessive. An affirmative defense does not per se legalize an activity and does not negate probable cause that a crime has been committed. We therefore affirm the Court of Appeals on this issue.

B. Whether the trial court erred in disallowing Fry's medical marijuana defense

¶ 23 Prior to trial, the State argued Fry was not a "qualifying patient" and could not, therefore, assert the compassionate use defense. The State also argued Fry could not claim the affirmative defense because the amount of marijuana in his possession exceeded a 60-day supply. The trial court concluded Fry was not a "qualifying patient" and declined to reach the State's other arguments. CP at 102-03. The Court of Appeals agreed with the trial court's ruling.
¶ 24 Whether the trial court erred in disallowing Fry's compassionate use defense is a question of law we review de novo. See Tracy, 158 Wash.2d at 687, 147 P.3d 559. Fry bears the burden of offering sufficient evidence to support the affirmative defense of compassionate use. Id. at 689, 147 P.3d 559 (citing State v. Janes, 121 Wash.2d 220, 236-37, 850 P.2d 495 (1993)). Fry bore the burden of producing at least some evidence that he was a qualified patient who could assert the compassionate use defense. Id. (citing Janes, 121 Wash.2d at 237, 850 P.2d 495).
¶ 25 The intent of the medical marijuana statute was that "[q]ualifying patients with terminal or debilitating illnesses who, in the judgment of their physicians, would benefit from the medical use of marijuana, shall not be found guilty of a crime under state law for their possession and limited use of marijuana." Former RCW 69.51A.005 (emphasis added).
¶ 26 A "qualifying patient" is a person who:
(a) Is a patient of a physician licensed under chapter 18.71 or 18.57 RCW;
(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;

*7 (c) Is a resident of the state of Washington at the time of such diagnosis;
(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and
(e) Has been advised by that physician that they may benefit from the medical use of marijuana.
Former RCW 69.51A.010(3) (1999). The State argues Fry is not a qualifying patient under the Act because Fry has not been diagnosed as having a terminal or debilitating medical condition under former RCW 69.51A.010(3)(b). Fry's doctor listed "severe anxiety, rage, & depression related to childhood" as the debilitating medical condition qualifying Fry to use medical marijuana. CP at 20-23.[5] These conditions did not qualify under I-692 as enacted.
¶ 27 In 2007, after the search and seizure in this case, the legislature revised the medical marijuana statute to include additional terminal or debilitating medical conditions that would qualify under the Act. RCW 69.51A.010(4). Fry's conditions of severe anxiety and rage are not included in the list of qualifying conditions, even as amended. In 2004, the State of Washington Department of Health Medical Quality Assurance Commission issued a final order denying a petition to include depression and severe anxiety in the list of "terminal or debilitating medical conditions" under RCW 69.51A.010(4). Final Order on Pet., In re Condrey, No. 04-08-A-2002MD (Wash. Med. Quality Assurance Comm'n Nov. 19, 2004).
¶ 28 Fry did not actually have a terminal or debilitating medical condition as provided in the Act. The stated intent of the statute was to allow a qualifying patient with a terminal or debilitating illness to be found not guilty of marijuana possession under certain circumstances. Former RCW 69.51A.005. ("The people of Washington state find that. . . [q]ualifying patients with terminal or debilitating illnesses . . . shall not be found guilty. . . ."). Conversely, the intent was not to excuse a marijuana user without a terminal or debilitating illness from criminal liability. Former RCW 69.51A.005.
¶ 29 In the only case we have decided under the Act, an otherwise qualifying patient received authorization to use medical marijuana from a doctor in California. Tracy, 158 Wash.2d at 686, 147 P.3d 559. This court interpreted the provision in the Act defining qualifying doctors as "those licensed under Washington law" to require a doctor formally licensed in Washington. Id. at 690, 147 P.3d 559. The majority opinion concluded that "[s]ince Tracy was not a patient of a qualifying doctor, she is not entitled to assert the defense." Id. The court stated unequivocally that "[o]nly qualifying patients are entitled to the defense under the act." Id. (citing former RCW 69.51A.005).
¶ 30 This court declined to extend the defense to Tracy, who was not in compliance with the statute because the doctor was not authorized to issue the medical marijuana authorization. Similarly, we will not extend the statute to permit an individual without a qualifying illness to claim its benefits.
¶ 31 In order to avail himself of the compassionate use defense, Fry must qualify under the Act. Fry does not have one of the listed debilitating conditions, and therefore does not qualify. We affirm the Court of Appeals decision to not permit Fry to claim the compassionate use defense.

CONCLUSION
¶ 32 We interpret chapter 69.51A RCW and its affirmative defense to criminal violations as it was enacted by the people and amended by the legislature. According to the language of the statute, and consistent with the intent of I-692, an authorized user of medical marijuana will have an affirmative defense only if he or she shows full compliance with the Act. However, an affirmative defense does not negate probable cause for a search in the case, conducted with a valid warrant.
*8 ¶ 33 The officers in this case had probable cause to search Fry's residence and seize the marijuana, which was in excess of two pounds. The trial court correctly decided that Fry could not avail himself of the compassionate use defense because his claimed health conditions did not qualify under the Act. We therefore affirm the Court of Appeals and uphold Fry's judgment and sentence.
WE CONCUR: Chief Justice BARBARA A. MADSEN, and Justices MARY E. FAIRHURST, and GERRY L. ALEXANDER.
CHAMBERS, J., concurring.
¶ 34 As a compassionate gesture, the people of this state, by initiative, allowed patients afflicted with medical conditions that might be eased by marijuana to use it under limited circumstances. Generally, whether a patient has a medical condition that qualifies under the Washington State Medical Use of Marijuana Act (the act), ch. 69.51A RCW, is a question of fact, not law. I disagree with the lead opinion's holding that as a matter of law Jason Fry did not have a qualifying condition under the act simply because the words used by Fry's doctor in issuing the authorization may have been inartful. The lead opinion approves the trial court's pretrial application of the law to the facts, its weighing of the evidence, and its decision as a matter of law that the compassionate use of marijuana defense was unavailable to Fry. In my view, a defendant in Fry's position should have the opportunity to offer evidence that he in fact had a qualifying condition and that his doctor issued the medical marijuana authorization for that condition. Criminal defendants have a due process right to have their defenses heard. State v. Lord, 161 Wash.2d 276, 301, 165 P.3d 1251 (2007) (citing Taylor v. Illinois, 484 U.S. 400, 408, 108 S.Ct. 646, 98 L.Ed.2d 798 (1988)); accord Chambers v. Mississippi, 410 U.S. 284, 294, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). And their right to a trial by a jury must remain inviolate. WASH. CONST. art. I, § 21. However, because I agree in result, I concur.

FACTS
¶ 35 Fry was smoking marijuana. Two Stevens County police officers smelled marijuana burning as they approached Fry's house. When questioned, Fry acknowledged the use of marijuana, and his wife, Tina, produced a form entitled "Documentation of Medical Authorization to Possess Marijuana for Medical Purposes in Washington State" issued by Fry's physician, Dr. Thomas Orvald. Clerk's Papers (CP) at 67, 20. The authorization stated that Dr. Orvald was treating Fry for "a terminal illness or debilitating condition as defined in RCW 6951A.010." CP at 20. On a separate page under a section marked "Documentation of debilitating medical condition from previous healthcare provider," Dr. Orvald wrote, "severe anxiety, rage, & depression related to childhood." Under the "subjective" section of his own notes detailing Fry's background Dr. Orvald wrote, "Severe anxiety!!! Can't function." CP at 22. The authorization also included notes from Dr. Orvald's physical examination of Fry where he noted a scar behind Fry's right ear and on his chin from being injured by a horse. These notes also reflect that Fry suffered from neck and lower back pain. In the comments section Dr. Orvald wrote: "Pt has found use of medical cannabis allows him to function [with] self control of anger, rage, & depression. Pt has been kicked in head 3 times by horse." CP at 23.
¶ 36 After a hearing on a motion in limine, the trial judge determined that Fry did not have a terminal or debilitating medical condition as defined under the act, was not a qualifying patient as a matter of law, and refused to allow Fry to proceed with his affirmative defense. The trial judge believed that precedent required him, instead of the jury or other trier of fact, to make this determination at this stage of the proceedings. This belief was based partially upon an unintended reading of an opinion of this court and an earlier Court of Appeals opinion. See State v. Tracy, 158 Wash.2d 683, 147 P.3d 559 (2006); State v. Shepherd, 110 Wash.App. 544, 41 P.3d 1235 (2002).

*9 ANALYSIS
¶ 37 In 1998, Washington voters approved Initiative 692, codified as chapter 69.51A RCW, often referred to as the compassionate use of medical marijuana act. Under the act "qualifying patients" are entitled to present an affirmative defense if charged with a violation of state law relating to marijuana. Former RCW 69.51A.040 (1999); Tracy, 158 Wash.2d at 688, 147 P.3d 559. A "qualifying patient" is defined as anyone who:
(a) Is a patient of a physician licensed under chapter 18.71 or 18.57 RCW;
(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;
(c) Is a resident of the state of Washington at the time of such diagnosis;
(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and
(e) Has been advised by that physician that they may benefit from the medical use of marijuana.
Former RCW 69.51A.010(3) (1999).
¶ 38 Former RCW 69.51A.010 also provides the following definitions:
(4) "Terminal or Debilitating Medical Condition" means:
(a) Cancer, human immunodeficiency virus (HIV), multiple sclerosis, epilepsy or other seizure disorder, or spasticity disorders; or
(b) Intractable pain, limited for the purpose of this chapter to mean pain unrelieved by standard medical treatments and medications; or
(c) Glaucoma. . . .
(d) Any other medical condition duly approved by the Washington state medical quality assurance board [commission] as directed in this chapter.[1]
(5) "Valid documentation" means:
(a) A statement signed by a qualifying patient's physician, or a copy of the qualifying patient's pertinent medical records, which states that, in the physician's professional opinion, the potential benefits of the medical use of marijuana would likely outweigh the health risks for a particular qualifying patient; and
(b) Proof of Identity such as a Washington state driver's license or identicard, as defined in RCW 46.20.035.
(Second alteration in original.)
¶ 39 There seems to be no question that Fry's physician was qualified, that he advised Fry of the risks and benefits of medical marijuana use, and that Fry was a resident of the state of Washington. Further, Fry possessed what would appear to be a valid authorization as defined by the statute. The issue before us is whether Fry could have had a qualified condition. The statute defines "Terminal or Debilitating Medical Condition" in the disjunctive. One permissible condition is intractable pain, meaning pain unrelieved by standard medical treatments and medications. Former RCW 69.51A.010(4)(b). It may be that Fry's doctor prescribed medical marijuana for chronic pain related to his head or neck injury. Or the authorization may have been to alleviate nausea, vomiting, or appetite loss caused by his severe anxiety and depression. In my opinion, whether Fry was suffering from any of these symptoms can only be determined after a factual inquiry. Without allowing Fry to present a defense, we cannot know whether a fact finder would conclude that Fry had symptoms that would qualify him under the terms defined under the statute. It is the role of the jury to apply the law to facts presented at a trial. See Champagne v. Dep't of Labor & Indus., 22 Wash.2d 412, 419, 156 P.2d 422 (1945).
¶ 40 Procedurally, the trial court struck Fry's medical use of marijuana defense upon the prosecutor's motion in limine, because anxiety was listed in the authorization and the court found as a matter of law that it was *10 not a qualifying condition.[2] Despite the signed authorization from Fry's physician that in his medical opinion "the potential benefits of the medical use of marijuana would likely outweigh the health risks for this patient" and that Fry had "a terminal illness or debilitating condition as defined in RCW 69.51A.010," CP at 20-21, the lead opinion nevertheless affirms the conclusion of the trial judge that Fry did not have a debilitating condition as a matter of law. In my view, Dr. Orvald's authorization was sufficient to satisfy the threshold showing required of Fry that he was a qualified person under the act. It was not the proper role of the trial judge to review the doctor's records and conclude as a matter of law that Fry did not have a qualifying condition. There is nothing in the act that requires the debilitating condition be listed or described in the authorization, and surely the voters did not intend that whether a person is guilty of a felony should turn on a physician's choice of words when filling out an authorization. Cf. Shepherd, 110 Wash.App. at 551, 41 P.3d 1235. Whether Fry had a qualifying condition under the act was a question of fact, not law.
¶ 41 The lead opinion uses our decision in Tracy to bolster its holding that Fry was not entitled to raise a defense. However, in Tracy, the issue was much different. In Tracy, the doctor was not authorized to issue the medical marijuana authorization. Tracy, 158 Wash.2d at 690, 147 P.3d 559. Our decision was controlled by the fact that a qualifying patient under the statute is one who has been diagnosed by a Washington-licensed physician and Tracy had been diagnosed only by a California physician not licensed in Washington. Id. Tracy presented a clear question of law, a question of statutory interpretation: could a physician not licensed in Washington satisfy the statutory condition of being diagnosed by a Washington licensed physician as required by former RCW 69.51A.010(3)(a)? We did not mean to imply that the issue of whether a person is a qualified person under the statute is always a question of law to be determined by the court.
¶ 42 When a defendant is charged with a violation of state law involving marijuana, he may assert that he intends to raise a medical marijuana defense under chapter 69.51A RCW. The State may make a motion to preclude the defendant from asserting the defense, arguing that the requirements of the statute have not been met. But in my view, if the defendant is able to present a written authorization from a Washington-licensed physician stating that the defendant has a qualifying condition, then he should be allowed to move forward with the defense. Whether a defendant can meet the burden of proving by a preponderance of the evidence that he in fact has a qualifying condition will of course depend on what is presented at trial to the trier of fact.
¶ 43 Although I conclude that the trial court erred by determining from the authorization alone that Fry did not have a qualifying condition and therefore was not a qualifying patient, I would affirm on alternative grounds. A trial judge has an additional role as a gatekeeper to ensure that there is sufficient evidence to permit any affirmative defense to proceed to trial. An opponent has the right to challenge any claimed defense. Here the prosecutor made a motion in limine to strike Fry's medical marijuana defense, arguing that Fry did not have a qualifying condition and that Fry had well more than a 60 day supply of marijuana. Although Fry was prepared to offer the testimony of a doctor and a botanist on the issue of the quantity of marijuana necessary for a 60 day supply, counsel conceded that Fry did not have a "qualifying condition" under the act.[3] *11 While the trial court erroneously, in my view, concluded as a matter of law that Fry was not a "qualified person" under the act, when the State moved in limine to exclude the defense Fry failed to offer additional supporting evidence that he had a qualifying condition. Based on Fry's concession and failure to provide any additional evidence to support the medical use of marijuana defense I would affirm.
¶ 44 On the issue of whether probable cause supports the issuance of the search warrant, I concur with the lean opinion in result only. I would affirm the Court of Appeals.
WE CONCUR: Justices SUSAN OWENS, CHARLES W. JOHNSON, and DEBRA L. STEPHENS.
SANDERS, J., dissenting.
¶ 45 Former RCW 69.51A.040(1) (1999) provides, "Any person meeting the requirements appropriate to his or her status under this chapter shall be considered to have engaged in activities permitted by this chapter and shall not be penalized in any manner, or denied any right or privilege, for such actions." (Emphasis added.) Under our state constitution we have a right to be free from searches and other invasions of privacy, absent authority of law. Const. art. I, § 7. This authority of law comes in the form of a warrant, which requires probable cause to believe a person is involved in criminal activity and a search will uncover evidence of that criminal activity. State v. Neth, 165 Wash.2d 177, 182, 196 P.3d 658 (2008); State v. Puapuaga, 164 Wash.2d 515, 522, 192 P.3d 360 (2008).
¶ 46 Here, police officers smelled burnt marijuana at Jason Fry's residence and therefore initially had probable cause to believe Fry was involved in criminal activity stemming from the possession of marijuana.[1] However, Fry produced documentation to the officers demonstrating he met the requirements of former RCW 69.51A.040(2) permitting him legally to possess marijuana. This documentation alleviated any probable cause to believe Fry was engaged in criminal activity based upon the smell of burnt marijuana. As the lead opinion recognizes, there is no indication the officers questioned the validity of the documentation at the time the search warrant was issued. Majority at 4. Nevertheless the officers conducted the search, invading Fry's home and his private affairs in violation of article I, section 7 and former RCW 69.51A.040(1).
¶ 47 The lead opinion reads the Washington state medical use of marijuana act to provide only an affirmative defense. Majority at 4 (quoting RCW 69.51A.005 (1999);.040(1)). Even so this ignores the protections of the second sentence of former RCW 69.51A.040(1): "Any person meeting the requirements appropriate to his or her status under this chapter shall be considered to have engaged in activities permitted by this chapter and shall not be penalized in any manner, or denied any right or privilege, for such actions." (Emphases added.) Fry's wife provided documentation to the officers to show Fry's "status" under the chapter the status of a "qualifying patient." See former RCW 69.51A.010(3) (1999).[2] As a facially "qualifying patient" Fry should have been "considered to have engaged in activities permitted by this chapter"a presumption *12 that a qualifying patient is acting in accordance with the chapter. See former RCW 69.51A.040(1). The only basis for probable cause was the smell of burnt marijuana. That evidence is consistent with activities permitted for qualifying patients under the chapter.
¶ 48 The requirement under former RCW 69.51A.040(2)(c) supports this reading of the second sentence of former RCW 69.51A.040(1). That provision requires a person asserting compliance with the act to "[p]resent his or her valid documentation to any law enforcement official who questions the patient or provider regarding his or her medical use of marijuana." Doing so provides officers with the basis to determine whether a person meets the requirements for a "qualifying patient" and thus invokes the presumption. Conversely, if former RCW 69.51A.040(1) provides only an affirmative defense after one is charged with a crime, as the majority asserts, the requirement to provide valid documentation to the officer serves no purpose as the officer has no reason to view the documentation relevant only to establishing an affirmative defense in court. Therefore with or without the required documents the individual is still arrested and jailed.
¶ 49 The lead opinion clings to the notion that an officer must conduct a search, even when an individual produces documentation of his status, because the search is the only way for the officer to confirm the individual does not possess more than a 60-day supply of marijuana. See majority at 5-6 (quoting former RCW 69.51A.040(2)(b)). But this ignores the fact that the officers here did not have probable cause to believe Fry possessed more than a 60-day supply; thus a search on this basis is unconstitutional. Whereas former RCW 69.51A.040(1) provides a reason for an officer to confirm an individual's status and former RCW 69.51A.040(2)(c) provides the means to do it, nothing in the act suspends constitutional privacy rights (nor could a statute trump the constitution in any event) permitting officers to confirm that all criteria in the act are met by searches not supported by probable cause.
¶ 50 Ultimately the lead opinion's interpretation of the act provides an absurd form of protection to qualifying patients. When an officer smells burnt marijuana coming from the home of an individual with a terminal or debilitating illness who benefits from marijuana use, the individual must provide his documentation to the officer to show he is a "qualifying patient." Yet according to the lead opinion, he is still subject to a search of his home and to an arrest. Certainly, at the individual's trial, he can assert the affirmative defense of the lead opinion's neutered version of the Washington state medical use of marijuana act; however this does not cure the unconstitutional search. Upon release he can return home once again, exhausted and in pain, and use marijuana again to alleviate his pain. However, following another knock on his door from an officer smelling burnt marijuana, the individual is again subject to interrogation, home search, and arrest. I do not find the mercy of the people of Washington for individuals with terminal or debilitating illnesses to be so fickle.
¶ 51 The trial court erred by not suppressing the fruits of a search that was based upon a warrant lacking probable cause. In addition, I agree with the concurrence to the extent it would hold that whether Fry had a qualifying condition is a question of fact that should be decided by a jury. Defendants in Fry's position are entitled to bring in evidence at trial to prove by a preponderance of the evidence that they indeed have a qualifying condition. Fry should not have been precluded from asserting a medical use of marijuana defense.
¶ 52 I dissent.
NOTES
[1] Because the court found Fry was not a "qualifying patient," it declined to reach the State's other arguments. The State also argued Fry would not qualify because the amount of marijuana in his possession, over 2 pounds, exceeded the 60-day supply the statute allowed. CP at 103.
[2] Article I, section 7 provides greater privacy protection than the Fourth Amendment, and an analysis under State v. Gunwall, 106 Wash.2d 54, 720 P.2d 808 (1986) is not necessary. Vickers, 148 Wash.2d at 108 n. 43, 59 P.3d 58.
[3] See, e.g., State v. Olson, 73 Wash.App. 348, 356, 869 P.2d 110 (1994) ("When an officer who is trained and experienced in marijuana detection actually detects the odor of marijuana, this by itself provides sufficient evidence to constitute probable cause justifying a search.") (citing State v. Huff, 64 Wash.App. 641, 647-48, 826 P.2d 698 (1992)).
[4] Washington Association of Criminal Defense Lawyers and American Civil Liberties Union of Washington.
[5] Fry's physical examination lists other ailments such as hearing loss, low back pain and a scar from being injured by a horse. However, there is no indication that these conditions were considered as a "qualifying condition." There is no indication that these conditions caused "intractable pain" that was "unrelieved by standard medical treatments."
[1] Since Fry's arrest, the statute has been revised to include qualifying "Diseases . . . which result in nausea, vomiting, wasting, appetite loss, cramping, seizures, muscle spasms, or spasticity" as "terminal or debilitating medical conditions" covered under the statute. RCW 69.51A.010(4)(f).
[2] At the hearing on the motion in limine the trial judge stated, "What I'm finding here as a matter of law [is] that there's no medical marijuana defense available to Mr. Fry and, in turn, Mrs. Fry because this anxiety and other problem is not something that's on the list. And that would appear to [be] a condition, pre-condition to even asserting the affirmative defense." Transcript of Proceeding (TR) at 49.
[3] The concession was actually made by counsel for Mrs. Fry who stated that "[the prosecutor] is saying well that wasn't a good authorization because that particular problem isn't covered by the statute. And I think we have to concede that. As we look at the statute, it wasn't. But the client believed it was." TP at 39. Counsel for Fry, present at the hearing, did not disagree and offered no evidence other than that offered by counsel for Mrs. Fry.
[1] The officers were informed of a marijuana-growing operation at Fry's residence, but the State has provided no additional details regarding that information. The probable cause justifying the search warrant was based entirely on the officers' smelling burnt marijuana. See State v. Fry, 142 Wash.App. 456, 460, 174 P.3d 1258 (2008). There is no argument here that additional grounds existed to provide probable cause absent the smell.
[2] "Qualifying patient" means a person who:

(a) Is a patient of a physician licensed under chapter 18.71 or 18.57 RCW;
(b) Has been diagnosed by that physician as having a terminal or debilitating medical condition;
(c) Is a resident of the state of Washington at the time of such diagnosis;
(d) Has been advised by that physician about the risks and benefits of the medical use of marijuana; and
(e) Has been advised by that physician that they may benefit from the medical use of marijuana.
Former RCW 69.51A.010(3).