James BALL, Plaintiff–Appellant,

v.

Larry G. MASSANARI *, Acting Commissioner of the Social Security Administration, Defendant–Appellee.

No. 99–36095.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 11, 2001

Filed June 15, 2001

---

* Larry G. Massanari, is substituted for his predecessor, as Acting Commissioner of the Social Security Administration. Fed. R.App. P. 43(c)(2).

Elie Halpern, and Jeanette Laffoon, Olympia, Washington, for the plaintiff-appellant.

Victoria Blais, Assistant Regional Counsel, Social Security Administration, Seattle, Washington, for the defendant-appellee.

Before: GOODWIN, GREENBERG,** and RAWLINSON, Circuit Judges.

---

** The Honorable Morton I. Greenberg, United States Circuit Judge for the Third Circuit, sitting by designation.

GOODWIN, Circuit Judge:

James Ball, who had worked as a logger since 1960, was injured on the job in 1986. Ball was also an alcoholic, and had been drinking heavily for several years. He has not worked since 1987, and appeals a judgment affirming the administrative denial of his 1994 application for Social Security disability (Title II) benefits.

Ball's SSI claim was approved, effective April 1, 1994, on the basis of physical impairment only, with consideration of his age, education, and vocational background. Ball's Title II claim, based on claims of disability because of osteopenia (reduced bone mass) and alcoholism, was denied at the initial and reconsideration levels, on the basis that he could not establish disability prior to September 30, 1992, his date last insured ("DLI") for Title II benefits.

Ball timely requested a hearing to appeal the denial of Title II benefits. At the 1994 hearing, the ALJ determined that additional medical information was needed and arranged for a consultative psychological evaluation. The evaluation was conducted by Charles Regets, Ph.D on October 25, 1995, who diagnosed Ball with alcohol dependence and "mild" dysthymia. Ball was also evaluated by the Eugenia Center on October 11, 1995, and by Jeff Bremer, Ph.D on February 20, 1996. Dr. Bremer confirmed Dr. Regets's diagnosis of "alcohol dependence, chronic, late state."

On March 28, 1996, Congress amended Title II of the Social Security Act by adopting the Contract With America Advancement Act ("CAAA"), Pub.L. No. 104–121 § 105(a)(1)(C). The amendment provides: "An individual shall not be consid-

ered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Ball's claim was still pending when, on December 26, 1996, the ALJ issued a decision in which he applied the five-step sequential process for evaluating disability claims set forth at 20 C.F.R. §§ 404.1520, 416.920.

The ALJ determined that Ball has osteopenia, a physical impairment that causes vocationally relevant limitations. The ALJ acknowledged that Ball's osteopenia was a severe impairment which precluded his ability to perform past relevant work. However, the ALJ concluded that Ball had the residual functional capacity to perform a full range of light work, and that Ball could perform other work in the national economy. Ball thus failed to satisfy step five of the sequential analysis. The ALJ acknowledged Ball's alcoholism was disabling, but concluded that Pub.L. No. 104–121 prevented him from ordering an allowance.

Ball timely requested review of the ALJ's decision by the Appeals Council. The Appeals Council declined to grant review, making the ALJ's decision the final administrative decision. See 20 C.F.R. § 404.981. Ball timely filed his Complaint in the United States District Court. On September 13, 1999 Magistrate Judge David E. Wilson filed his Report and Recommendation, and by Order and Judgment entered October 8, 1999, the district court adopted the Report and affirmed the Commissioner. This appeal followed, and we affirm.

Ball concedes that he is an alcoholic, and the Commissioner does not dispute that Ball would be entitled to benefits but for Public Law 104–121 (42 U.S.C. § 423(d)(2)(C)), which became effective in 1996 while this case was pending. Accordingly, the first on appeal is whether the district court erred in affirming the Commissioner's application of the amendment to this claim.

■ Ball asserts that the district court erred in applying the 1996 amendment to his case, because he became disabled in 1987 and his insured status continued until 1992, and thus his entitlement was "vested." According to Ball, the ALJ's construction of Pub.L. No. 104–121 therefore results in an impermissible retroactive application. See Pub.L. No. 104–121, § 105(a)(5)(A) ("The amendments … apply to any individual who applies for, or whose claim is finally adjudicated by the Commissioner of Social Security with respect to, benefits under title II … based on disability on or after the date of the enactment of this Act."). While we have not been cited to a published case in which this court has explicitly dealt with the retroactivity question presented by the amendment, a number of other circuits have published opinions upholding the application of the amendment to pending cases. See, e.g., O'Kane v. Apfel, 224 F.3d 686 (7th Cir.2000); Adams v. Apfel, 149 F.3d 844 (8th Cir.1998).

Ball's claim was not "finally adjudicated by the Commissioner" because final administrative action did not take place until the Appeals Council denied review on May 6, 1998, well after the March 29, 1996 enactment date of the relevant amendments.

The effective date provision of the amendments set forth at P.L. No. 104–121 § 105(a)(5)(A) applies to those claimants whose claims were not finally adjudicated by March 29, 1996. Although this represents a retroactive application of the statute within the meaning of Landgraf v. USI Film Prods., 511 U.S. 244, 245, 269, 114

S.Ct. 1483, 128 L.Ed.2d 229 (1984), the amendments reflect congressional intent that such retroactivity is permissible. Since Ball's claim was pending at the time of the March 29, 1996 enactment of Pub.L. No. 104–121, the law by its plain language applies to his claim.

Ball also argues that the ALJ failed to conduct the materiality analysis of his alcoholism required by 20 C.F.R. § 404.1535, which sets forth guidelines for determining whether a claimant's drug addiction or alcoholism is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535 (1999). The provision states that "[t]he key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol." *Id.* If a claimant's current physical or mental limitations would remain once he stopped using drugs and alcohol, and these remaining limitations are disabling, then drug addiction or alcoholism is not material to the disability, and the claimant will be deemed disabled. *Id.*

■ In materiality determinations pursuant to 42 U.S.C. § 423(d)(2)(C), the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination. *See Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir.1999); *Mittlestedt v. Apfel*, 204 F.3d 847 (8th Cir.2000).

Ball argues that the ALJ erred when he failed to consider what impairments would remain once Ball stopped drinking and whether these impairments would be disabling. In support of his claim, Ball cites to *Sousa v. Callahan*, 143 F.3d 1240, 1242 (9th Cir.1998), where the district court held that the amendments precluded an award of benefits because "plaintiff's mental problems during the pertinent period were intertwined and exacerbated by long-standing substance abuse." In reversing the denial of benefits, we held that the district court erred in failing to give plaintiff an opportunity "to present evidence relevant to the amendment's primary inquiry: whether plaintiff's organic brain syndrome, dysthymia, and adjusted disorder would remain during periods when she stopped using drugs and alcohol." *Id.* at 1245. This court therefore imposed a duty, in accordance with 20 C.F.R. § 404.1535, to "separate out" non-substance-abuse impairments and determine whether the claimant would be disabled even if he stopped drinking or abusing drugs. *Id.*

The next question is whether *Sousa* requires this "separating-out" analysis in all cases where the record shows non-substance abuse impairments, or only when such impairments are "severe."

■ Ball argues that Dr. Regets's diagnosis of "dysthymic disorder, mild" makes his case analogous to the facts of *Sousa* because Sousa was found to suffer from dysthymia causing a "marked impairment of … psychological, social, and occupational functioning." *Id.* at 1244. However, while there is little question that the "marked impairment" caused by dysthymia in *Sousa* warranted a "separating out" analysis, the district court correctly held that there was no need to do so in Ball's case.

Indeed, the ALJ had noted that in determining whether Ball was disabled, it was necessary to establish whether the claimant has a "severe impairment." Ball's foot and leg impairment was severe, but by itself, not disabling. The ALJ was aware that Dr. Regets diagnosed Ball's dysthymic disorder as "mild," and observed that Dr. Regets had attributed Ball's inability to work exclusively to his

alcoholism. The ALJ concluded that "[t]he claimant has no impairment which meets the criteria of any of the listed impairments described in Appendix 1 of the regulations," thus implicitly finding that Ball's dysthymic disorder, standing alone, was not disabling.

■ The ALJ recognized that Ball had one severe impairment-osteopenia. The ALJ therefore applied the sequential evaluation process, and in doing so, determined that the 1996 amendments prevented him from considering alcoholism when determining disability. Ball argues that this determination was in error, asserting that the ALJ was required to differentiate the impairments that would still remain independent of Ball's drinking. However, Ball incorrectly assumes that because the ALJ stated he could not "consider" alcohol dependence, he failed to conduct the "differentiating" analysis required by 20 C.F.R. § 404.1535.

In stating that alcohol would not be considered, the ALJ was not shirking his responsibility to determine whether alcoholism was a contributing factor material to the issue of disability, but was in fact complying with this responsibility. By removing alcoholism from the analysis (i.e., refusing to consider alcoholism), the ALJ was in effect addressing whether "we would still find [Ball] disabled if [he] stopped using drugs or alcohol." The ALJ determined that Ball's severe osteopenia, standing alone, was not disabling: that is, Ball was still able to perform a full range of light work, and could perform other work in the national economy. This conclusion is not challenged in this appeal.

As noted above, in *Sousa*, the record established that the claimant's dysthmia caused a "marked impairment of [the claimant's] psychological, social, and occupational functioning," which contrasts with Ball's condition which left him some residual ability to perform light work. Thus, in *Sousa* the ALJ would certainly have reason to believe that the claimant's dysthmic disorder, when separated from her alcoholism, would likely have been disabling. Sousa's ALJ therefore should have allowed her to present evidence relevant to the question whether her organic brain syndrome dysthymia remained during periods when she stopped using drugs and alcohol and whether this condition would be disabling within the meaning of the statute. That was the purpose of our remand in *Sousa*.

Because Ball's condition in the instant case was non-severe, there would be no reason for the ALJ in the instant case to conduct a similar inquiry. In other words, because his dysthymia was mild, Ball could not proceed past step two of the evaluation process, and there was no need explicitly to consider whether the condition, standing alone, would be disabling.

In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir.2001), the Eleventh Circuit considered a claim that the ALJ "misapplied the CAAA by failing to separate [claimant's] limitations caused by alcohol use from those caused by other impairments *before engaging in the five-step sequential disability determination*." *Id.* at 1278 (emphasis added). Doughty was asserting that the ALJ had the burden of "separating out" any non-substance-abuse related impairments from alcohol and drug-related impairments before proceeding with the five-step analysis, i.e., before determining whether any of the impairments were "severe" under step two. *Id.* The *Doughty* court rejected this argument, holding that, under *Brown v. Apfel*, 192 F.3d 492 (5th Cir.1999), the claimant bears the burden of proving that his alcoholism or drug addiction is not a contributing factor material to his disability determination, and that the ALJ did not bear the burden of determin-

ing and separating out the claimant's impairments prior to applying the five-step sequential evaluation. *Id.* at 1280. *See also Mittlestedt v. Apfel,* 204 F.3d 847, 850, 852 (8th Cir.2000) (holding that alcoholism was the only "severe" impairment suffered by the claimant within the meaning of step 2 of the sequential analysis, thus making clear that there was no need to determine whether any other impairment standing alone would qualify as a disability).

■■ We hold that an ALJ must conduct a "differentiating" analysis to separate the alcoholism and drug-related impairments from the unrelated physical impairments only if the record indicates that the non-substance-abuse-related impairments are "severe" and therefore pass step 2 of the sequential evaluation process. It follows that if the claimant's ailment does not pass step 2, *ipso facto* it is not disabling. There was no error in finding that Ball was not disabled within the meaning of Title II of the Social Security Act.

■ Ball's final claim is that the Pub.L. No. 104–121 amendment is unconstitutional because it violates his equal protection rights. Ball argues that Congress, through Pub.L. No. 104–121 § 105, has targeted those afflicted with chronic alcoholism for "special and discriminatory classification." Ball argues that if an agency's interpretation of a statute classifies or distinguishes between groups of claimants for purposes of allocating benefits, then such interpretation is subject to equal protection review. *See, e.g., Richardson v. Belcher,* 404 U.S. 78, 81, 92 S.Ct. 254, 30 L.Ed.2d 231 (1971) (concluding that federal agency benefits are governed by equal protection through the due process conduit of the Fifth Amendment); *see also Spragens v. Shalala,* 36 F.3d 947 (10th Cir. 1994) (holding that rational basis standard applies and permits a blind recipient of benefits to earn $600 per month while other recipients lose eligibility if their earnings exceed $300).

■■ The first question courts must ask when conducting an equal protection analysis is whether the legislative or administrative classification at issue burdens a "suspect" or "quasi-suspect" class. If the statute employs a suspect class (such as race, religion, or national origin) or burdens the exercise of a constitutional right, then courts must apply strict scrutiny, and ask whether the statute is narrowly tailored to serve a compelling governmental interest. *See Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 219, 115 S.Ct. 2097, 132 L.Ed.2d 158 (1995).

■ If the statute employs a quasi-suspect classification, such as gender or illegitimacy, then courts must apply "intermediate" scrutiny and ask whether the statute is substantially related to an important governmental interest. *See United States v. Virginia,* 518 U.S. 515, 567–68, 116 S.Ct. 2264, 135 L.Ed.2d 735 (1996).

■ If the statute does not involve a suspect or quasi-suspect classification, then "rational basis" review applies, in which a court must ask whether the statute is rationally-related to a legitimate governmental interest. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 83–84, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

The Supreme Court has extended heightened scrutiny to classifications based on race, *see Korematsu v. United States,* 323 U.S. 214, 216, 65 S.Ct. 193, 89 L.Ed. 194 (1944), sex, *see J.E.B. v. Alabama ex rel. T.B.,* 511 U.S. 127, 135, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994), national origin, *see Wygant v. Jackson Bd. of Educ.,* 476 U.S. 267, 273, 106 S.Ct. 1842, 90 L.Ed.2d 260 (1986), alienage, *see Nyquist v. Mauclet,* 432 U.S. 1, 7, 97 S.Ct. 2120, 53 L.Ed.2d 63

(1977), and illegitimacy, *see Clark v. Jeter,* 486 U.S. 456, 108 S.Ct. 1910, 100 L.Ed.2d 465 (1988).

■ Alcoholics have not yet achieved either a suspect, or a quasi-suspect class for purposes of equal protection analysis. *See Mitchell v. Commissioner of the Soc. Sec. Admin.,* 182 F.3d 272, 274 (4th Cir. 1999); *Gazette v. City of Pontiac,* 41 F.3d 1061 (6th Cir.1994) (holding, in a case involving the question whether the City and its police department had a rational basis for not investigating a person's disappearance because she was a known alcoholic, that "[t]he status of being an alcoholic, or a recovering alcoholic, is not a suspect class for equal protection analysis, and so the lowest level of scrutiny applies to the defendants' action.") (citing *City of Cleburne v. Cleburne Living Center,* 473 U.S. 432, 445–46, 105 S.Ct. 3249, 87 L.Ed.2d 313 (1985)).

We hold that the administrative classification here need only satisfy rational-basis scrutiny. The classification clearly is rationally-related to a legitimate governmental goal. The government seeks through the legislation to discourage alcohol and drug abuse, or at least not to encourage it with a permanent government subsidy. The Fourth Circuit recently addressed this precise issue in *Mitchell v. Commissioner of the Soc. Sec. Admin.,* 182 F.3d 272 (4th Cir.1999). In *Mitchell,* the claimant, who was denied disability insurance benefits, also alleged that the 1996 amendments violated the Constitution by singling out alcoholics and drug addicts for discriminatory treatment. *Id.* at 273. Noting first that alcoholics are neither a suspect nor a quasi-suspect class, the court held that Pub.L. No. 104–121 § 105 must be "accorded a strong presumption of validity." *Id.* at 274 (quoting *Heller v. Doe,* 509 U.S. 312, 319, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993)). "Rational basis review," the court

held, "is thus a paradigm of judicial restraint." *Id.* (quoting *FCC v. Beach Comm., Inc.,* 508 U.S. 307, 314, 113 S.Ct. 2096, 124 L.Ed.2d 211 (1993)). We agree that Section 105 satisfies rational basis review.

■ Ball argues that the goal of discouraging drug and alcohol abuse is a mere pretext for the "true purpose" of Section 105: "saving money" and "preservation of resources." Saving public resources is not necessarily a malignant purpose. But Ball misses the point that Congress could have been motivated by a number of legitimate concerns, and was under no duty to enumerate all of them. Other points were briefed and argued but none require further discussion. The judgment of the district court is

AFFIRMED.