**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

FRANK WRIGHT,
           *Plaintiff-Appellant,*

v.

INCLINE VILLAGE GENERAL
IMPROVEMENT DISTRICT,
           *Defendant-Appellee.*

No. 10-16043

D.C. No.
3:08-cv-00119-
LRH-VPC

OPINION

Appeal from the United States District Court
for the District of Nevada
Larry R. Hicks, District Judge, Presiding

Argued and Submitted
November 15, 2011—San Francisco, California

Filed December 27, 2011

Before:   Michael Daly Hawkins and Milan D. Smith, Jr.,
Circuit Judges, and Kevin Thomas Duffy, District Judge.*

Opinion by Judge Milan D. Smith, Jr.

---

*The Honorable Kevin Thomas Duffy, United States District Judge for
the Southern District of New York, sitting by designation.

---

**COUNSEL**

Daniel T. Hayward (argued), Laxalt & Nomura, Ltd., Reno, Nevada, for the plaintiff-appellant.

Stephen C. Balkenbush (argued) and Katherine F. Parks, Thorndal, Armstrong, Delk, Balkenbush & Eisinger, Reno, Nevada, for the defendant-appellee.

---

**OPINION**

M. SMITH, Circuit Judge:

With few exceptions, Defendant-Appellee Incline Village General Improvement District (IVGID) only allows people who own or rent real property within IVGID's 1968 boundaries to access beaches that it owns and operates. Plaintiff-Appellant Frank Wright (Wright), who is excluded from the beach because he does not live within the 1968 boundaries, argues that this policy is unconstitutional under the First Amendment and the Equal Protection Clause of the Fourteenth Amendment. The district court granted IVGID's motion for summary judgment, and denied Wright's motion for summary judgment. We hold that the beaches are not a traditional public forum, and that Wright's exclusion from the

beaches does not violate either his First Amendment or Four-teenth Amendment rights. Accordingly, we affirm the district court.

## FACTUAL AND PROCEDURAL BACKGROUND

IVGID is a general improvement district created under Chapter 318 of the Nevada Revised Statutes. *See* Nev. Rev. Stat. § 318.055.1. It is "a body corporate and politic and a quasi-municipal corporation," *id.* § 318.015.1, with the power to "acquire, construct, reconstruct, improve, extend and better lands, works, systems and facilities for recreation," *id.* § 318.143.1.

In June 1968, IVGID acquired property that included, among other real property, parcels of land commonly known as Burnt Cedar Beach, Incline Beach, Ski Beach, and Hermit Beach (collectively, the beaches). The land within the 1968 boundaries (1968 property) was purchased and improved with proceeds derived from the sale of public bonds (bonds). All payments due on the bonds were made exclusively by owners of the 1968 property.

The deed conveying the 1968 property to IVGID contains the following restrictive covenant (restrictive covenant):

> It is hereby covenanted and agreed that the real prop-erty above described, and any and all improvements now or hereafter located thereon, shall be held, maintained and used by grantee, its successors and assigns, only for the purposes of recreation by, and for the benefit of, property owners and their tenants (specifically including occupants of motels and hotels) within [IVGID] as now constituted, and, as the Board of Trustees of said District may determine, the guests of such property owners, and for such other purposes as are herein expressly authorized.

The deed also permits individual owners of real estate within the 1968 property to enforce the restrictive covenant.

Section 62 of IVGID's Ordinance No. 7 (Ordinance 7) limits access to the beaches, as required by the restrictive covenant. It provides, in pertinent part: "*Deed Restrictions*. Parcels annexed to the District after May 30, 1968, are not eligible for District beach access as per deed restrictions listed on the beach property."

IVGID designated certain portions of the 1968 property as public fora, in Policy and Procedure Number 136 (Policy 136). Specifically, IVGID "encourages any individual or group to use such designated public forum areas for the exercise of expression, speech and assembly, in accordance with this Policy." The areas designated as public fora in Policy 136 include "the parking lots, the walkways within and adjacent to the parking lots, and the sidewalks adjacent to any public entrance to any building open to the public . . . ." Policy 136 designates the beaches as a nonpublic forum.

Wright lives in Crystal Bay, Nevada. His real property lies within the IVGID's current boundaries, but is not part of the 1968 property. Because Wright does not reside or own real property within the 1968 property, IVGID has denied him access to the beaches.

Wright alleges that IVGID routinely ignores the restrictive covenant, on which Ordinance 7 is based. For example, he introduced evidence purporting to show that IVGID opens the beaches to the general public for a fireworks display on the Fourth of July, and allows its employees to access the beaches even if they do not own property or reside within the 1968 property.

Wright filed a complaint in the district court on March 10, 2008, seeking declaratory, injunctive, and monetary relief under 28 U.S.C. § 2201, 42 U.S.C. § 1983, and 42 U.S.C.

§ 1988. He subsequently filed an amended complaint alleging that Ordinance 7 and Policy 136 violate the First and Fourteenth Amendments, facially, and as applied.

The district court granted IVGID's summary judgment motion and denied Wright's summary judgment motion, concluding that both Ordinance 7 and Policy 136 are constitutional. Wright timely appealed.

## STANDARD OF REVIEW AND JURISDICTION

"We review a district court's legal determinations, including constitutional rulings, *de novo*." *Berger v. City of Seattle*, 569 F.3d 1029, 1035 (9th Cir. 2009) (en banc) (citation omitted). "A district court's determinations on mixed questions of law and fact that implicate constitutional rights are also reviewed *de novo*." *Id.* (citation omitted). When "the key 'issues aris[e] under the First Amendment,' we also conduct an independent review of the facts." *Id.* (quoting *Rosenbaum v. City & Cnty. of S.F.*, 484 F.3d 1142, 1152 (9th Cir. 2007)). A district court's grant or denial of summary judgment also is reviewed *de novo*. *Russell Country Sportsmen v. U.S. Forest Serv.*, ___ F.3d ___, Nos. 10-35623, 10-35784, 2011 WL 4820942, at *3 (9th Cir. Oct. 12, 2011). We have jurisdiction under 28 U.S.C. § 1291.

## DISCUSSION

On appeal, Wright contends that Ordinance 7 and Policy 136 violate the First and Fourteenth Amendments, facially and as applied to him. To succeed on a facial constitutional challenge, Wright must establish that Ordinance 7 and Policy 136 are "unconstitutional in every conceivable application" or "seek[ ] to prohibit such a broad range of protected conduct that [they are] unconstitutionally 'overbroad.' " *Reed v. Town of Gilbert*, 587 F.3d 966, 974 (9th Cir. 2009) (quoting *Members of the City Council of the City of L.A. v. Taxpayers for Vincent*, 466 U.S. 789, 796 (1984)). To succeed on an as-

applied challenge, Wright must show that the policies are unconstitutional as applied to him. *See Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 608 F.3d 1084, 1096 (9th Cir. 2010). Thus, if we find that Ordinance 7 and Policy 136 are constitutional as applied to Wright, the facial challenge also fails. *See id.*

## A.   First Amendment

**[1]** "[T]he 'First Amendment does not guarantee access to property simply because it is owned or controlled by the government.' " *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 46 (1983) (quoting *U.S. Postal Serv. v. Council of Greenburgh Civic Ass'ns*, 453 U.S. 114, 129 (1981)). The government may limit the use of properties under its control to the uses to which the properties are lawfully dedicated. *See Christian Legal Soc'y Chapter of the Univ. of Cal., Hastings Coll. of the Law v. Martinez*, 130 S. Ct. 2971, 2984 (2010) (citing *Cornelius v. NAACP Legal Def. & Educ. Fund, Inc.*, 473 U.S. 788, 800 (1985)).

**[2]** The extent to which the government may limit access to its properties depends on the nature of the relevant forum. *See Cornelius*, 473 U.S. at 800. Government property is characterized as: (1) a traditional public forum, (2) a designated public forum, (3) a limited public forum, or (4) a nonpublic forum. *See Christian Legal Soc'y*, 130 S. Ct. at 2984 n.11; *Ark. Television Comm'n v. Forbes*, 523 U.S. 666, 677 (1998) (citing *Cornelius*, 473 U.S. at 802).

**[3]** A traditional public forum is government property "which 'by long tradition or by government fiat [has] been devoted to assembly and debate,' " such as public streets and parks. *Cornelius*, 473 U.S. at 802 (quoting *Perry Educ. Ass'n*, 460 U.S. at 45). "The proper analysis for a challenge to an ordinance that restricts speech in a public forum is whether the restriction is a valid time, place, and manner restriction on

speech." *Klein v. San Diego Cnty.*, 463 F.3d 1029, 1034 (9th Cir. 2006).

A designated public forum is "government property that has not traditionally been regarded as a public forum [that] is intentionally opened up for that purpose." *Christian Legal Soc'y*, 130 S. Ct. at 2984 n.11 (citation omitted). "Government restrictions on speech in a designated public forum are subject to the same strict scrutiny as restrictions in a traditional public forum." *Pleasant Grove City v. Summum*, 555 U.S. 460, 469-70 (2009).

A limited public forum is "limited to use by certain groups or dedicated solely to the discussion of certain subjects." *Id.* at 470 (citation omitted). "In such a forum, a government entity may impose restrictions on speech that are reasonable and viewpoint-neutral." *Id.* (citation omitted).

A nonpublic forum is government property that does not "by tradition or designation, serve as a forum for public communication; content-based restrictions in nonpublic fora need only be reasonable and not an effort to suppress expression merely because public officials oppose the speaker's view." *Preminger v. Peake*, 552 F.3d 757, 765 (9th Cir. 2008) (citation and internal quotation marks omitted).

### 1.   Whether the beaches are a traditional public forum

Wright contends that the beaches are a traditional public forum, and that Ordinance 7 and Policy 136 are not valid time, place, and manner restrictions on speech.

[4] We consider three factors in determining whether government property is a traditional public forum: (1) "the actual use and purposes of the property, particularly status as a public thoroughfare and availability of free public access to the area," (2) "the area's physical characteristics, including its location and the existence of clear boundaries delimiting the

area," and (3) "traditional or historic use of both the property in question and other similar properties." *ACLU of Nev. v. City of Las Vegas*, 333 F.3d 1092, 1100-01 (9th Cir. 2003) (citations omitted). Here, each of the three factors weighs in favor of finding that the beaches are not a traditional public forum, and we so hold.[1]

### i.   Actual use and purposes of property

**[5]** The beaches are not public thoroughfares. Persons who do not own or rent a portion of the 1968 property are, with minor exceptions, not given access to the beaches. Instead, to be admitted to the beaches, a person must display identification to a guard at a kiosk showing eligibility for beach access. Although the kiosks are generally not staffed in the late fall, winter, and early spring, and the restrictions on beach access are not aggressively enforced during those seasons, Ordinance 7 clearly states that limitations on beach access still apply.

**[6]** Only the owners of the 1968 property paid for the acquisition and improvement of the beaches, and the admission of the general public to the beaches would violate the restrictive covenant, which can be enforced by both the IVGID and private property owners within the 1968 property. The restrictive covenant specifies that the beaches are to be "held, maintained and used by [IVGID] . . . only for the purposes of recreation by, and for the benefit of, [the 1968 property] owners and their tenants . . . ." Although there have been some de minimis exceptions, the beaches have been used almost exclusively by owners and tenants of the 1968 property. That only a limited set of property owners may access the beaches for limited, non-expressive purposes also weighs against finding the beaches to be a traditional public forum. *See Int'l Soc'y for Krishna Consciousness, Inc. v. Lee*, 505 U.S. 672, 682-83 (1992) (holding that an airport terminal is

---

[1]The parties do not dispute that IVGID is a government entity that must comply with the First Amendment.

not a public forum, partly because Port Authority management considered the principal purpose of the terminals to be the facilitation of passenger air travel, not the promotion of expression).[2]

[7] With de minimis exceptions, the "actual use and purposes" of the beaches are, and have been, consistently restricted by the covenant, Ordinance 7, and the actual practice of IVGID. Moreover, there is no evidence in the record that the beaches are used, or have ever been used, to provide a place for people to express themselves, such as at a town commons or a park. Had such uses occurred, they would have clearly violated the restrictive covenant, and could have been challenged by both the IVGID and any person owning a portion of the 1968 property.

### ii.   Area's physical characteristics

[8] The beaches' physical characteristics also weigh against finding them to be a traditional public forum. *See Lee*, 505 U.S. at 680 ("[S]eparation from acknowledged public areas may serve to indicate that the separated property is a special enclave, subject to greater restriction." (citing *United States v. Grace*, 461 U.S. 171, 179-80 (1983))).[3]

---

[2]*See also United States v. Kokinda*, 497 U.S. 720, 728-30 (1990) (plurality opinion) (considering that the actual purpose of a postal sidewalk is to assist postal patrons in negotiating the space between the parking lot and the front door of the post office, not to facilitate general commerce, in finding that postal sidewalks were not public fora); *Greer v. Spock*, 424 U.S. 830, 837-38 (1976) (considering that the primary purpose of a fort is to train soldiers in concluding that a fort was not a public forum although civilians were freely permitted to visit unrestricted areas).

[3] *See also Ctr. for Bio-Ethical Reform, Inc. v. City & Cnty. of Honolulu*, 455 F.3d 910, 920 (9th Cir. 2006) (considering the physical separation of airspace from ground and beaches, that special equipment and authorization were required to access the airspace, and the airspace's lack of any typical function as a locus of expressive activity in finding the airspace to be a nonpublic forum); *cf. Venetian Casino Resort, L.L.C. v. Local Joint*

**[9]** Although persons who are lawfully granted access to the beaches may swim, play games, rest, and enjoy the surroundings at the beaches as they could at a typical public park, the properties here are not ordinary public beaches. Kiosks and gates surround the beaches, proscribing access to anyone not entitled to access them. The kiosks and gates separate the beaches from other portions of the 1968 property that are accessible to the general public, and clearly indicate to the public that the beaches are not intended for the exercise of First Amendment rights. The beaches are a special enclave, subject to greater restriction on access than the parking lots and other areas surrounding the beaches.

### iii.   Traditional or historic use of both properties in question and other similar properties

**[10]** The traditional and historic use of the beaches is further evidence that they are not a traditional public forum. *See Taxpayers for Vincent*, 466 U.S. at 813-15 (finding that the Constitution does not require the government to permit signs to be posted on utility poles, partly because of the absence of a traditional right of access to the poles); *Perry Educ. Ass'n*, 460 U.S. at 47-48 (considering the absence of any evidence that access to internal school mail had been granted as a matter of course to all who sought to distribute material in finding the school mail system was a nonpublic forum).

**[11]** Since IVGID acquired the beaches in 1968, it has generally limited access to them to the 1968 property owners and their tenants. Although Wright presented evidence that IVGID

---

*Exec. Bd. of Las Vegas*, 257 F.3d 937, 945-48 (9th Cir. 2001) (considering the absence of physical features distinguishing the sidewalk in front of a casino from the connecting public sidewalks in finding the sidewalk to be a traditional public forum); *Gerritsen v. City of Los Angeles*, 994 F.2d 570, 576 (9th Cir. 1993) (considering the absence of any features distinguishing blue-line areas from other areas within a park in finding that the blue-line areas are a public forum).

has, on limited occasions, allowed some persons who do not otherwise qualify to access the beaches, their use of the beaches has been strictly limited to brief recreational activities. No evidence suggests that the beaches ever have been open to the general public for expressive, non-recreational uses.

**[12]** Wright's First Amendment argument rests largely on the unsupported assumption that because parks are generally public fora, the beaches here are as well. Although parks "are considered, without more, to be 'public forums,' " *Grace*, 461 U.S. at 177 (citations omitted), the beaches are not typical parks. Context matters in forum analysis. *See Cornelius*, 473 U.S. at 799-800; *Johnson v. Poway Unified Sch. Dist.*, 658 F.3d 954, 961 (9th Cir. 2011). Parks in general are " 'public places' *historically associated* with the free exercise of expressive activities . . . ." *Grace*, 461 U.S. at 177 (emphasis added). The Supreme Court thus had in mind parks with traditional characteristics, such as being open to the public, and unencumbered by restrictions, such as the restrictive covenant in this case, in declaring that parks in general are public forums. *See id.*

Wright also relies heavily on inapposite cases from other circuits to support his argument that the beaches are a public forum. Tellingly, these cases involve parks and beaches readily available to the general public where property use was not limited to recreation by deed restriction or otherwise. *See, e.g.*, *Naturist Soc'y, Inc. v. Fillyaw*, 958 F.2d 1515, 1522-23 (11th Cir. 1992); *Paulsen v. Lehman*, 839 F. Supp. 147, 158-61 (E.D.N.Y. 1993). In contrast, IVGID has historically limited access to the beaches to certain persons for recreational uses only because it is required to do so by the restrictive covenant.

**[13]** The beaches here are similar to properties where the government has restricted access or only allowed the public to use portions for limited, non-expressive purposes. *See, e.g.*,

*Ctr. for Bio-Ethical Reform*, 455 F.3d at 920 (holding that the airspace surrounding Honolulu's beaches was a nonpublic forum, partly because of the traditional limitations on use of and access to airspace); *Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 966 (9th Cir. 2002) (considering the traditional restrictions on use of and access to a government complex containing public offices and courtrooms in finding that the complex was a nonpublic forum).

**[14]** This is also not a case in which the government has attempted to destroy or convert a public-forum park into a nonpublic forum. There is no evidence in the record that the beaches have ever been used as a public forum, or that there has ever been a lapse in the application of the restrictive covenant to the beaches.

Moreover, were we to hold that IVGID could not exclude persons from the beaches as required by the restrictive covenant, we would be removing "one of the essential sticks in the bundle of property rights" belonging to the prior owner of the 1968 property; namely, the right to exclude others. *PruneYard Shopping Ctr. v. Robins*, 447 U.S. 74, 82 (1980). Of course, there are some limitations on property owners' ability to enforce that right. *See, e.g.*, *Shelley v. Kraemer*, 334 U.S. 1, 20 (1948) (holding that state courts may not enforce racially restrictive covenants). However, the general public does not generally have a First Amendment right to access private property for expression. *See Hudgens v. NLRB*, 424 U.S. 507, 520-21 (1976) (concluding that picketers do not have a First Amendment right to enter a privately-owned shopping center to advertise their strike against a company); *Lloyd Corp. v. Tanner*, 407 U.S. 551, 556, 570 (1972) (holding that respondents, who sought to distribute handbill invitations to a meeting to protest the draft and the Vietnam war, had no right to do so at a privately owned and operated shopping center). Requiring private property owners to allow the general public to access their property to express messages the property owners may oppose could violate the property owners' First

Amendment rights. *See Lloyd Corp.*, 407 U.S. at 552, 569-70; *see also Wooley v. Maynard*, 430 U.S. 705, 707, 715, 717 (1977) (holding that a New Hampshire statute requiring vehicles to bear license plates with the state motto, "Live Free or Die," not obscured could not be constitutionally enforced because it violated the defendants' First Amendment right "to hold a point of view different from the majority and to refuse to foster, in the way New Hampshire commands, an idea they find morally objectionable").

**[15]** Were we to find that Wright has a right of access, we would have to disregard the restrictive covenant, or declare it unconstitutional, neither of which has been sought by Wright. Moreover, doing so would require us to adopt two unsound rules; namely, (1) that private property owners do not have the right to create enforceable restrictive covenants that might exclude some persons, when transferring property to the government, and (2) that the government does not have the right to acquire property burdened by enforceable restrictive covenants that might exclude some persons. Furthermore, we would have to disregard the First Amendment right of the prior owner of the 1968 property to insist, when transferring the 1968 property, that the property may only be used by certain property owners and their tenants for recreational purposes. *See Lloyd Corp.*, 407 U.S. at 552, 569-70. We also would have to disregard the First Amendment rights of the owners of parcels benefitted by the restrictive covenant to insist that the restrictive covenant be enforced. We decline to do so. *See, e.g.*, *id.* Thus, the beaches are not a traditional public forum.[4]

---

[4]The beaches are also not a designated public forum because IVGID has not intentionally opened the beaches for the purpose of serving as a public forum or for indiscriminate public use for communication purposes. *See Christian Legal Soc'y*, 130 S. Ct. at 2984 n.11 (citation omitted); *Alpha Delta Chi-Delta Chapter v. Reed*, 648 F.3d 790, 797 (9th Cir. 2011).

### 2.   Whether the restrictions are reasonable and viewpoint neutral

**[16]** At most, the beaches are a limited public forum. Assuming that they are, for purposes of this opinion,[5] Ordinance 7 and Policy 136 do not violate the First Amendment if they are "(1) reasonable in light of the purpose of the forum; and (2) viewpoint neutral." *Alpha Delta Chi-Delta* Chapter, 648 F.3d at 798 (citation omitted).

### i.   Reasonableness in light of purpose of forum

**[17]** Ordinance 7 and Policy 136 are reasonable in light of the beaches' purpose.

**[18]** IVGID adopted Ordinance 7 because the restrictive covenant requires that the beaches be used "only for the pur-

---

[5]We assume, without deciding, that the beaches are at most a limited public forum. Regardless of whether the beaches are a limited public forum or a nonpublic forum, the test is the same, as several of our sister circuits have noted. *See, e.g.*, *Victory Through Jesus Sports Ministry Found. v. Lee's Summit R-7 Sch. Dist.*, 640 F.3d 329, 334-35 (8th Cir. 2011); *Byrne v. Rutledge*, 623 F.3d 46, 54 n.8 (2d Cir. 2010); *Miller v. City of Cincinnati*, 622 F.3d 524, 535-36 (6th Cir. 2010); *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 865 n.2 (7th Cir. 2006); *Goulart v. Meadows*, 345 F.3d 239, 252 n.23 (4th Cir. 2003); *cf. Galena v. Leone*, 638 F.3d 186, 197 n.8 (3d Cir. 2011) (stating that "[r]ecently the Court has used the term 'limited public forum' interchangeably with 'nonpublic forum,' thus suggesting that these categories of forums are the same[,]" and declining to distinguish between limited public fora and nonpublic fora) (citations omitted). *Compare Ctr. for Bio-Ethical Reform*, 455 F.3d at 915, 920 (stating that an ordinance prohibiting aerial advertising in a nonpublic forum "does not violate the First Amendment as long as it is '(1) reasonable in light of the purpose served by the forum and (2) viewpoint neutral' " (quoting *Brown v. Cal. Dep't of Transp.*, 321 F.3d 1217, 1222 (9th Cir. 2003))), *with Alpha Delta Chi-Delta Chapter*, 648 F.3d at 798 (stating that plaintiffs' exclusion from a limited public forum "is permissible if San Diego State's requirement that student groups adhere to the nondiscrimination policy is (1) reasonable in light of the purpose of the forum; and (2) viewpoint neutral") (citation omitted).

poses of recreation by, and for the benefit of, property owners and their tenants (specifically including occupants of motels and hotels) within [IVGID] as . . . constituted" in 1968. The covenant is still enforceable by owners of portions of the 1968 property. In restricting access to the beaches, Ordinance 7 expressly references the restrictive covenant. The fact that only owners of portions of the 1968 property paid for the purchase and improvement of the beaches also strongly supports Ordinance 7's reasonableness.

Similarly, Policy 136's restrictions on expression at the beaches by the general public are reasonable in light of the forum's purpose.[6] IVGID is subject to a restrictive covenant requiring it to limit access to the beaches to owners and tenants of the 1968 property, and that the beaches be used for recreational purposes only. Allowing Wright and other members of the general public to access the beaches for expressive, non-recreational purposes would violate the restrictive covenant in two ways: (1) by permitting ineligible persons to access the beaches, and (2) by permitting the beaches to be used for non-recreational purposes.

### ii.   Viewpoint neutrality

**[19]** Ordinance 7 and Policy 136 are viewpoint neutral. *See Alpha Delta Chi-Delta Chapter*, 648 F.3d at 800 ("[A] restriction that 'serves purposes unrelated to the content of expression' and only incidentally burdens some speakers, messages, or viewpoints 'is deemed neutral.'" (quoting *Christian Legal Soc'y*, 130 S. Ct. at 2994)).

---

[6]Whether Policy 136 actually limits expression at the beaches is unclear. It simply designates certain portions of the 1968 property as public fora and the remaining areas of the 1968 property, including the beaches, as nonpublic fora. It does not criminalize or provide any penalties or consequences for expression on the beaches. Its sole purposes seems to be opening some non-beach portions of the 1968 property to the general public for expression, and emphasizing that the remaining areas are not open to the general public for expression.

**[20]** Ordinance 7's exclusion of certain persons from the beaches has nothing to do with the ideology, opinion, or perspective of persons seeking access. *See id.* ("'Viewpoint discrimination is . . . an egregious form of content discrimination,' and occurs when 'the specific motivating ideology or the opinion or perspective of the speaker is the *rationale* for the restriction [on speech].' " (quoting *Truth v. Kent Sch. Dist.*, 542 F.3d 634, 649-50 (9th Cir. 2008), *overruled on other grounds*, *L.A. Cnty. v. Humphries*, 131 S. Ct. 447, 450-51 (2010))) (alterations in original). By its terms, Ordinance 7 does not limit access based on viewpoint, nor does it even address viewpoint. Instead, it limits access exclusively based on property ownership or occupancy, as required by the restrictive covenant.

**[21]** Similarly, Policy 136 does not limit speech at the beaches based on the ideology, opinion, or perspective of persons seeking access for expression. The only limitation on speech is that the beaches may, under the restrictive covenant, be used only for recreational purposes. The clear purpose of Policy 136 is to honor that requirement. Therefore, Policy 136 does not discriminate based on viewpoint to the extent it limits speech at the beaches. *See Alpha Delta Chi-Delta Chapter*, 648 F.3d at 800.

Wright also appears to contend that Policy 136 is unconstitutional under the First Amendment because it restricts speech in designated public forum areas. He is mistaken. Policy 136 expressly designates certain non-beach areas within the 1968 property as public fora, available to any individual or group for purposes of expression, speech, and assembly. Any restrictions on speech within such a designated area "are subject to strict scrutiny and, therefore, 'must be narrowly tailored to serve a compelling government interest.' " *Alpha Delta Chi-Delta Chapter*, 648 F.3d at 797 (quoting *Christian Legal Soc'y*, 130 S. Ct. at 2984 n.11). However, all restrictions on activities in the designated public forum areas of the

1968 property meet that standard, and thus violate no constitutional requirements.

**[22]** Because Ordinance 7 and Policy 136 are reasonable in light of the purpose of the forum and are viewpoint neutral, they do not violate the First Amendment. *See id.* at 798 (citation omitted). Because the policies are constitutional as applied to Wright, they also are not facially unconstitutional.

## B. Equal Protection Clause of the Fourteenth Amendment

**[23]** "The Equal Protection Clause does not forbid classifications." *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992). "It simply keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike." *Id.* (citation omitted); *see also Honolulu Weekly, Inc. v. Harris*, 298 F.3d 1037, 1047 (9th Cir. 2002) ("The Equal Protection Clause directs that 'all persons similarly circumstanced shall be treated alike.' " (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982))). "Evidence of different treatment of unlike groups does not support an equal protection claim." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1168 (9th Cir. 2005) (citation omitted).

Wright argues that both Ordinance 7 and Policy 136 violate the Equal Protection Clause of the Fourteenth Amendment, facially, and as applied to him. He contends that owners of the 1968 property, and owners of property within IVGID's current boundaries other than the 1968 property, are similarly situated, but are treated differently under Ordinance 7 and Policy 136, in violation of the Equal Protection Clause. He also asserts that Ordinance 7 and Policy 136 violate the Equal Protection Clause because they discriminate among speech-related activities in a public forum.

### 1. Ordinance 7

**[24]** Ordinance 7 treats persons differently because it limits access to the beaches to owners and tenants of the 1968

property. Persons eligible for beach access and persons not eligible for beach access under Ordinance 7 are not similarly situated. Only owners of portions of the 1968 property paid for the purchase and improvement of the beaches. Moreover, giving Wright access to the beaches would violate the terms of the restrictive covenant, unlike the admission of persons eligible for beach access under Ordinance 7. Because the two groups are not alike in all relevant respects, Wright's evidence of disparate treatment does not support his equal protection claim. *See Nordlinger*, 505 U.S. at 10; *Thornton*, 425 F.3d at 1168. Because Wright has no evidence that similarly situated persons are treated differently, his equal protection claim fails *ab initio*. *See Nordlinger*, 505 U.S. at 10; *Thornton*, 425 F.3d at 1167-68; *see also Van Susteren v. Jones*, 331 F.3d 1024, 1026-27 (9th Cir. 2003) (finding no equal protection violation because two groups of candidates were not similarly situated).

Even if Wright could offer evidence that Ordinance 7 treats similarly situated persons differently, his equal protection claim still would fail. "In determining whether a statute, regulation, or ordinance violates the Equal Protection Clause of the United States Constitution, we begin our analysis by determining the proper level of scrutiny to apply for review." *Honolulu Weekly*, 298 F.3d at 1047. "We apply strict scrutiny if the governmental enactment 'targets a suspect class or burdens the exercise of a fundamental right.' " *Id.* (quoting *United States v. Hancock*, 231 F.3d 557, 565 (9th Cir. 2000)). "When applying strict scrutiny, we ask 'whether the [ordinance] is narrowly tailored to serve a compelling governmental interest.' " *Id.* (quoting *Ball v. Massanari*, 254 F.3d 817, 823 (9th Cir. 2001)). "If the ordinance does not concern a suspect or semi-suspect class or a fundamental right, we apply rational basis review and simply ask whether the ordinance 'is rationally-related to a legitimate governmental interest.' " *Id.* (quoting *Ball*, 254 F.3d at 823).

Strict scrutiny does not apply when an ordinance is not content-based, does not infringe upon a fundamental right,

and does not concern a suspect or semi-suspect class. *See Honolulu Weekly*, 298 F.3d at 1047-48. Ordinance 7 is content-neutral because it limits beach access based on a criterion unrelated to the content of the messages persons requesting access seek to convey, and its purpose is not to regulate access based on the content of speakers' messages. *See Turner Broad. Sys., Inc. v. FCC*, 512 U.S. 622, 645-46 (1994). It also does not infringe a fundamental right because the beaches are not a public forum. *See Currier v. Potter*, 379 F.3d 716, 731 (9th Cir. 2004) ("[T]he viability of equal protection claims relating to expressive conduct is contingent on the existence of a public forum. Only when rights of access associated with a public forum are improperly limited may we conclude that a fundamental right is impinged." (quoting *Monterey Cnty. Democratic Cent. Comm. v. U.S. Postal Serv.*, 812 F.2d 1194, 1200 (9th Cir. 1987))). Moreover, Ordinance 7 does not target a suspect or semi-suspect class. *See, e.g.*, *Schnuck v. City of Santa Monica*, 935 F.2d 171, 176 (9th Cir. 1991). Therefore, strict scrutiny is not appropriate, and rational basis review applies. *See Honolulu Weekly*, 298 F.3d at 1047-48.

Because rational basis review applies, "we ask whether the ordinance is 'rationally-related to a legitimate governmental interest.' " *Id.* at 1048 (quoting *Ball*, 254 F.3d at 823). "[W]e do not require that the government's action actually advance its stated purposes, but merely look to see whether the government could have had a legitimate reason for acting as it did." *Currier*, 379 F.3d at 732 (quoting *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1050 (9th Cir. 2000)). IVGID could have had at least two legitimate reasons for adopting Ordinance 7. First, Ordinance 7 complied with the restrictive covenant. Second, Ordinance 7 excluded persons who did not pay for the purchase and improvement of the beaches. Ordinance 7 is a rational attempt to achieve those interests. *See Honolulu Weekly*, 298 F.3d at 1048.

**[25]** In sum, Ordinance 7 is constitutional as applied to Wright. Thus, his facial challenge also fails.

### 2. Policy 136

**[26]** Wright also claims that Policy 136 violates the Equal Protection Clause. Policy 136 treats persons differently to the extent it permits persons entitled to beach access to express themselves on the beaches, but requires the general public to express itself only in designated public forum areas.[7] Even if we assume that Policy 136 contains such a restriction, however, the groups allegedly treated differently are not similarly situated. Allowing Wright or any other member of the general public to access the beaches for any purpose would violate the restrictive covenant. In contrast, allowing owners of portions of the 1968 property and their tenants to access the beaches does not violate the restrictive covenant. Therefore, Policy 136 does not treat similarly situated persons differently, and his equal protection claim fails on this basis alone. *See Nordlinger*, 505 U.S. at 10; *Thornton*, 425 F.3d at 1168.

Even if Wright had demonstrated that Policy 136 treated similarly situated persons differently, his equal protection claim still would fail because Policy 136 is content neutral. The restrictive covenant requires IVGID to exclude Wright and the general public from the beach. The exclusion has nothing to do with the content of Wright's speech. *See Turner Broad. Sys.*, 512 U.S. at 645-46; *Honolulu Weekly*, 298 F.3d at 1044. Because the beaches are not a public forum, Policy 136 does not infringe a fundamental right. *See Currier*, 379 F.3d at 731. Moreover, it does not target a suspect or semi-suspect class. *See, e.g.*, *Kraebel*, 959 F.2d at 401-02; *Schnuck*, 935 F.2d at 176. Therefore, Policy 136 would be subject to

---

[7]It is unclear whether Policy 136 permits persons entitled to access to use the beaches for expressive, non-recreational purposes. By its terms, it only designates certain areas as public fora and other areas, including the beaches, as nonpublic fora.

rational basis review, not strict scrutiny. *See Honolulu Weekly*, 298 F.3d at 1047-48.

[27] Policy 136 survives rational basis review because it is justified by legitimate government interests: complying with the restrictive covenant, and excluding persons who did not pay for the purchase and improvement of the beaches. Therefore, Policy 136 does not violate the Equal Protection Clause, facially, or as applied to Wright.[8] *See id.* at 1048.

## CONCLUSION

Because Ordinance 7 and Policy 136 are constitutional, we hold that the district court did not err in granting IVGID's summary judgment motion and denying Wright's summary judgment ruling, and we affirm.

**AFFIRMED.**

---

[8]Allowing persons entitled to access the beaches to express themselves on the beaches would arguably violate the restrictive covenant to the extent such uses are non-recreational. Nevertheless, equal protection does not require IVGID "to eliminate all evils in order to legislate against some." *United States v. McDougherty*, 920 F.2d 569, 572 (9th Cir. 1990) (citing *United States v. Thornton*, 901 F.2d 738, 740 (9th Cir. 1990)); *see also Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 466 (1981) ("The Equal Protection Clause does not deny the State of Minnesota the authority to ban one type of milk container conceded to cause environmental problems, merely because another type, already established in the market, is permitted to continue in use."). That principle holds true where, as here, rational basis review applies. *See Clover Leaf Creamery Co.*, 449 U.S. at 461, 466; *Vance v. Bradley*, 440 U.S. 93, 97, 108 (1979); *Taylor v. Rancho Santa Barbara*, 206 F.3d 932, 936-37 (9th Cir. 2000); *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999). Therefore, the arguable failure of Policy 136 to prevent all possible violations of the restrictive covenant does not render it unconstitutional. *See Clover Leaf Creamery Co.*, 449 U.S. at 466.