**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| MICHAEL ADAM ASSENBERG, husband and wife and the marital community comprised thereof; CARLA ASSENBERG, wife and husband and the marital community comprised thereof; DAVID ARMSTRONG, a single person, | No.   15-35757 |
| | D.C. No. 2:14-cv-00145-TOR |
| | |
| Plaintiffs-Appellants, | MEMORANDUM<sup>*</sup> |
| | |
| v. | |
| | |
| WHITMAN COUNTY; WHITMAN COUNTY SHERIFF'S DEPARTMENT; BRETT MYERS, Sheriff; RONALD ROCKNESS, Undersheriff; DON BROADFOOT, Deputy; SCOTT PATRICK, Detective; MARK GIBBS, Detective; BRYSON AASE, Detective; QUAD CITIES DRUG TASK FORCE; WHITMAN COUNTY JAIL; WHITMAN COUNTY BOARD OF COMMISSIONERS; GREG PARTCH, Whitman County Comm., | |
| | |
| Defendants-Appellees. | |

Appeal from the United States District Court

---

\*      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

for the Eastern District of Washington
Thomas O. Rice, Chief Judge, Presiding

Argued and Submitted March 29, 2018
U of Idaho Moscow

Before: TALLMAN, N.R. SMITH, and CHRISTEN, Circuit Judges.

Michael Adam Assenberg ("Adam"), Carla Assenberg ("Carla"), and David Armstrong ("Armstrong") (collectively "Appellants"), appeal the district court's grant of summary judgment to Defendants.[1] We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. The search of the Assenberg home and the seizure of marijuana plants and marijuana paraphernalia were supported by probable cause. Probable cause for a search warrant requires the magistrate conclude "there is a fair probability that contraband or evidence of a crime will be found in a particular place" after considering "all the circumstances set forth in the affidavit." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In May 2011, the manufacture, delivery, and possession of marijuana were crimes in Washington. *See* Wash. Rev. Code. §§ 69.50.204(c)(22), 59.50.401 (2010). In March 2011, a confidential informant (CI) informed Detective Patrick that Adam was selling marijuana, that the CI "had purchased

---

[1] On appeal, Appellants made no argument that Carla or Armstrong's rights were violated. Therefore, those arguments are waived. *Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999).

marijuana, edibles and marijuana tincture from Adam on multiple occasions," and that Adam had "initially s[een] [the CI's] authorization to use medical marijuana and had the CI sign a 'care provider' form each time [the CI] made a purchase." During the investigation, Detective Patrick found a website that "advertised [Adam's] business as a dispensary for medical marijuana patients." The CI also assisted the Quad Cities Drug Task Force with two controlled buys from Adam. During both controlled buys, Adam showed the CI "several varieties of marijuana and marijuana edibles and tincture that he had for sale." Adam "told the CI that his prices were better because he was getting better deals from his supplier." Officers with the Task Force also followed Adam from his home in Colfax, Washington, to the location of both of the controlled buys.

In any event, a medical marijuana authorization card was only an affirmative defense to marijuana-related criminal charges. Wash. Rev. Code § 69.51A.040(2) (2010); *State v. Fry*, 228 P.3d 1, 7-8 (Wash. 2010) (en banc) ("Possession of marijuana . . . is still a crime in the state of Washington. . . . [T]he authorization only created a potential affirmative defense that would excuse the criminal act."). As such, Adam's medical marijuana authorization could establish a possible affirmative defense to possession charges, but did not defeat the fact that there was

a "substantial basis for concluding that probable cause existed." *Gates*, 462 U.S. at 238-39 (original ellipsis, alteration, and quotation marks omitted).

The warrant was not obtained by deception. Judicial deception requires: (1) "a substantial showing of the officers' deliberate falsehood or reckless disregard for the truth"; and (2) "establish[ing] that, but for the dishonesty, the searches . . . would not have occurred." *Chism v. Washington*, 661 F.3d 380, 386 (9th Cir. 2011) (original quotation marks and brackets omitted). There is no evidence Detective Patrick engaged in a "deliberate falsehood or reckless disregard for the truth." *Id.* In his affidavit for a search warrant, Detective Patrick stated that a 2006 investigation of Adam revealed that he had a medical marijuana authorization at that time and disclosed that Adam currently purported to act as a medical marijuana caregiver. Further, even if Detective Patrick knew Adam had a current medical marijuana authorization, that fact would not have ensured the search would not have occurred; an affirmative defense does not defeat probable cause. *Fry*, 228 P.3d at 7-8.

2. Adam was lawfully arrested. "An officer has probable cause to make a warrantless arrest when the facts and circumstances within his knowledge are sufficient for a reasonably prudent person to believe that the suspect has committed a crime." *Rosenbaum v. Washoe Cty.*, 663 F.3d 1071, 1076 (9th Cir. 2011). In

addition to the evidence supporting the search of Adam's home, Detective Patrick requested the CI set up a third controlled buy with Adam during the first week of May, 2011. During the initial call, Adam "told the CI he had marijuana, edibles and tincture available for sale and to call anytime." On May 4, 2011, the CI called Adam and arranged for a sale later that day. During that phone call, Adam again told the CI he "had marijuana and edibles available for sale." Adam was stopped and arrested en route to the controlled buy. At the time of the arrest, Adam admitted he "had some brownies and about two and a half ounces of marijuana" in the vehicle. This is sufficient evidence for a reasonable officer to conclude Adam was violating Washington law. Again, the fact that Adam may have had a valid medical marijuana authorization was only an affirmative defense to marijuana-related criminal charges. *Fry*, 228 P.3d at 7-8.[2]

3. Prison officials did not act with deliberate indifference in violation of Adam's Fourteenth Amendment rights. For liability under the Due Process Clause,

---

[2] There is also no municipal liability regarding the search and seizure of the home or Adam's arrest. Municipal liability under 42 U.S.C. § 1983 requires Appellants "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury" and that the municipality "was the 'moving force'" behind the alleged constitutional violation. *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 403-04 (1997). Appellants' contention that "the creation of the Drug Task Force can be construed as official policy or custom leading to the constitutional deprivations" is insufficient to meet this burden.

a prison official must treat the detainee with "deliberate indifference." *Simmons v. Navajo Cty.*, 609 F.3d 1011, 1017 (9th Cir. 2010). To prove deliberate indifference, "a plaintiff must show that the official was (a) *subjectively aware* of the serious medical need and (b) failed adequately to respond." *Id.* at 1017-18 (emphasis in original, quotation marks and citations omitted). An official demonstrates "deliberate indifference to [the] serious medical needs of prisoners" if he "den[ies], delay[s], or intentionally interfere[s] with medical treatment." *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (en banc) (citations omitted).

Adam presented insufficient evidence to establish deliberate indifference. First, there is no evidence (other than Adam's claim) that Adam actually suffered the claimed head injury while in custody. Adam's photos certainly show some red on the back of Adam's head. However, Adam admitted in his deposition that "[the photos] didn't show enough evidence" to establish damages, and Adam provided no medical or treatment records. Further, the photo time stamps indicate they were taken at 7:52 AM on the morning he was arrested, which was approximately six hours before Adam arrived at the county jail. Second, Adam did not know of the alleged head injury or notice it, until his wife noticed it when he arrived home from the jail. If Adam did not know he was injured, it would have been especially difficult for jail officers to know as well. Third, Adam's assertion that he informed

6

jail officials (before being jailed) that he "was really suffering" and "could go into a grand mal seizure," is (at best) only evidence he could/might have a seizure. He did not say he had been diagnosed with seizures in the past, that certain circumstances would precipitate seizures, or that he must have certain medication at certain times. Finally, Sergeant Keller testified that Adam never requested treatment, and Detective Patrick attested that (during his interview with Adam) he "did [not] see him suffer any kind of head injury or see evidence of such an injury" and "[Adam] never complained . . . that he had suffered any kind of injury while in police custody." In sum, there is insufficient evidence to establish that jail officials acted with deliberate indifference.

4. The County did not violate Adam's First Amendment rights. "The First Amendment does not guarantee access to property simply because it is owned or controlled by the government." *Wright v. Incline Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1134 (9th Cir. 2011) (internal quotation marks and brackets omitted). The restrictions the government may impose depend on the "nature of the relevant forum." *Id.* Adam neither made an argument, nor presented evidence, that the Whitman County Commissioners' Meeting was any specific type of forum. Therefore, we cannot determine whether Adam had a right to speak. Accordingly, Adam failed to establish his First Amendment rights were violated.

7

Parties shall bear their own costs.

**AFFIRMED.**